Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EDWARD LIEBERMAN  Apelante  v.  ORIENTAL BANK  Apelada | KLAN202301007 | Apelación Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan  Núm.: SJ2018CV05121  Sobre: Nulidad de Contrato, Error en el Consentimiento y/o Dolo Contractual, Perjuicios y Reivindicación |
|---|---|---|

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y la Jueza Prats Palerm

*Prats Palerm, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de mayo de 2024.

Comparece la parte demandante-apelante, Edward Lieberman ("señor Lieberman" o "Apelante") mediante *Apelación* y solicita que revisemos la Sentencia Sumaria emitida el 6 de agosto de 2023 y notificada el 8 de agosto de 2023 por el Tribunal de Primera Instancia, Sala Superior de San Juan ("TPI"). Mediante el referido dictamen, el TPI declaró Ha Lugar la moción de sentencia sumaria presentada por Oriental Bank ("Oriental" o "Apelado") y desestimó la demanda incoada por el señor Lieberman.

Por los fundamentos que expondremos a continuación, se *Confirma* la *Sentencia* apelada.

**I.**

El caso de marras tiene su origen procesal en una *Demanda* presentada el 10 de julio de 2018 por el señor Lieberman en contra de Oriental sobre nulidad de contrato y daños. Surge de la *Demanda,* que el 9 de octubre de 2013, Oriental otorgó un préstamo de $190,000 a la corporación Sublink Solutions, Inc. ("Sublink"). El

préstamo fue garantizado personal y solidariamente por Daniel Grossman, Sabina Grossman, Mercer Henry y Adlin Pérez ("Garantizadores").

El 5 de enero de 2017, Sublink presentó una petición de Quiebra ante la Corte de Quiebras de los Estados Unidos bajo el Título 11 del Código de Quiebras, el cual posteriormente fue convertido a Título 7. Durante los procedimientos, Oriental presentó ante la Corte de Quiebras un "*Proof of Claim*", reclamando que Sublink le adeudaba la cantidad de $73,792.79, a razón del préstamo otorgado en el 2013. En atención al "*Proof of Claim*", el señor Lieberman comenzó negociaciones con Oriental para adquirir el préstamo otorgado a Sublink. Así las cosas, el 31 de agosto de 2017, el señor Lieberman y Oriental suscribieron un contrato de compraventa, mediante el cual el señor Lieberman adquirió el préstamo por la cantidad de $54,000.00.

El señor Lieberman reclamó ante el TPI que, el contrato era nulo porque su consentimiento estuvo viciado. Sostuvo que, la cuantía verdaderamente adeudada del préstamo, $53,970.65 (*Ledger*) y $56,188.10 (*Legal*), era menor a la que supuestamente fue representada en la compraventa, $73,792.79. Alegó, además, que, Oriental retuvo información respecto a la suma adeudada, a pesar de esta haber sido solicitada por el señor Lieberman. Por tanto, arguyó que su consentimiento, al momento de suscribir el contrato, estuvo viciado por las actuaciones dolosas e intencionales de Oriental.

Luego de varios trámites procesales, el 25 de septiembre de 2019, Oriental presentó una solicitud de sentencia sumaria. En la misma, adujo que, el señor Lieberman fue quien acudió ante Oriental y expresó su interés en adquirir el préstamo. Oriental alegó que, el interés del señor Lieberman se debía a que, como "*Master of Franchise*" de Domino´s para Puerto Rico e Islas Vírgenes, quería

proteger la reputación e imagen de mercado de Domino´s, ya que el equipo de la tienda era parte del colateral del préstamo otorgado a Sublink.

Por otro lado, Oriental sostuvo que, debido a una relación previa entre el señor Lieberman, Sublink y los garantizadores, el demandante conocía las particularidades del préstamo. De igual manera, expresó que todos los documentos que obraban en el expediente de crédito evidenciaban que la cantidad principal al momento de las conversaciones entre el señor Lieberman y Oriental era $53,970.65 (*Ledger*) y $56,188.10 (*Legal*). Por tal razón, adujo que aceptó la cuantía de $54,000.00 ofertada por el señor Lieberman porque se acercaba a la suma adeudada por concepto del principal.

A su vez, Oriental reclamó que el contrato de contraventa es la ley entre las partes, que el señor Lieberman tuvo o debió tener conocimiento de la deuda que adquiría y que, actuó temerariamente al presentar la *Demanda*. Para sostener las alegaciones realizadas, entre la prueba documental anejada, Oriental presentó lo siguiente: (1) el Pagaré por la cantidad de $190,000.00 otorgado por Sublink; (2) las Garantías Ilimitadas suscritas por los garantizadores; (3) el "*Proof of Claim*" presentado por Oriental ante la Corte de Quiebras por la cantidad de $73,792.79; (4) correos electrónicos entre el señor Lieberman y Oriental; (5) el "*Bill of Sale*", y; (6) el "*Dual Accounting Balances Ledger*", el cual reflejaba el balance adeudado y disponible en el expediente de crédito. Por todo lo cual, solicitó la desestimación de la *Demanda* por dejar de exponer una reclamación que justifique la concesión de un remedio.

Por su parte, el 3 de octubre de 2019, el señor Lieberman presentó su propia moción de sentencia sumaria. En esta, alegó que, al momento de otorgar el contrato y posteriormente, Oriental le representó al señor Lieberman que la cantidad adeudada por

Sublink era de $73,792.79, la cantidad reclamada por Oriental ante el Tribunal de Quiebras. El señor Lieberman añadió que, en ningún momento le advirtieron que Sublink había realizado pagos posteriores a la presentación del *"Proof of Claim"*, los cuales disminuyeron la suma adeudada a Oriental. Como consecuencia, reclamó que su consentimiento estuvo viciado, que las representaciones realizadas por Oriental fueron dolosas y que, sufrió daños por razón de estas. Además, sostuvo que las actuaciones intencionales y dolosas de Oriental provocaron que le reclamara a los garantizadores del préstamo adquirido el pago de la deuda por la totalidad indicada en el acuerdo, la cual era una deuda improcedente, haciéndole incurrir en gastos innecesarios y afectando su reputación.

Por tanto, solicitó que se le ordenara a Oriental a devolverle lo pagado por la compraventa, que se compensaran los gastos y que se le condenara al pago de honorarios de abogado por temeridad. Entre la evidencia presentada por el señor Lieberman anejada a la solicitud de sentencia sumaria se encontraba: (1) la deposición realizada al señor Luis Caro, Oficial de Oriental; (2) un correo electrónico enviado por el señor Lieberman al señor Luis Caro, fechado el 28 de agosto de 2017, solicitando copia del expediente del préstamo, y; (3) la carta enviada el 19 de enero de 2018 a los garantizadores, reclamando el pago de $73,792.79.

Posteriormente, el 31 de octubre de 2019, el señor Lieberman presentó su oposición a la moción de sentencia sumaria presentada por Oriental y sostuvo que, no se le proveyó información sobre la suma verdaderamente adeudada por Sublink.

El 6 de diciembre de 2019, Oriental presentó su oposición a la moción de sentencia sumaria presentada por el señor Lieberman. Nuevamente, arguyó que el señor Lieberman conocía la cantidad adeudada y que su interés en adquirir el préstamo era liberar al

deudor original y a los garantizadores. Asimismo, adujo que no le ocultó información al señor Lieberman.

Luego, el 15 de enero de 2020, el señor Lieberman presentó una réplica a la oposición de Oriental y reiteró lo expuesto en su moción de sentencia sumaria.

El TPI emitió una *Sentencia* el 6 de agosto de 2023, notificada el 8 de agosto de 2023, en la cual declaró Con Lugar la solicitud de Sentencia Sumaria presentada por Oriental y desestimó la Demanda incoada por el señor Lieberman. El foro de instancia determinó que, al señor Lieberman, voluntariamente, adquirió la acreencia con todos los riesgos que ello conllevaba y liberó a Oriental de toda responsabilidad. Asimismo, señaló que el contrato de compraventa establecía que el comprador le representó al vendedor que había investigado todos los aspectos del préstamo comercial y que, prestaba su firma libremente y sin coerción.

Inconforme, el 23 de agosto de 2023, el señor Lieberman solicitó determinaciones de hechos adiciones y reconsideración. El foro de instancia declaró No Ha Lugar la referida solicitud mediante *Resolución* dictada el 10 de octubre de 2023 y notificada el 11 de octubre de 2023.

Insatisfecho aún, el 9 de noviembre de 2023, el señor Lieberman presentó una *Apelación* solicitando la revisión de la Sentencia Sumaria del 6 de agosto de 2023. El apelante realiza el siguiente señalamiento de error:

> **Erró el TPI al declarar Ha Lugar la solicitud sumaria de la recurrida y desestimar la demanda y no declarar Con Lugar la solicitud sumaria de la recurrente.**

El apelado presentó su alegato en oposición el 8 de diciembre de 2023.

Perfeccionado el recurso y examinados los documentos que obran en el expediente, estamos en posición de resolver.

## II.

### -A-

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.36, [...] permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones donde no exista controversia material de hecho que requiera ventilarse en un juicio plenario, y el derecho así lo permita. *León Torres v. Rivera Lebrón,* 204 DPR 20 (2020). Mediante el mismo, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *Íd.* Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Íd.*

[A]l presentar una moción de sentencia sumaria, al amparo de [la] Regla 36.2, [se] deberá cumplir con los siguientes requisitos de forma, los cuales están preceptuados en la Regla 36.3 de Procedimiento Civil: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. *Pérez Vargas v. Office Depot/Office Max, Inc.*, 203 DPR 687 (2019).

Al considerar la solicitud, el Tribunal deberá asumir ciertos los hechos no controvertidos que se encuentran sustentados por los documentos presentados por el promovente. *E.L.A. v. Cole,* 164 DPR 608, 626 (2005). La inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues sólo procede si bajo ningún supuesto de hechos prevalece el promovido. *Íd.,* pág. 625. Conforme a esta normativa procesal, la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación. *León Torres v. Rivera Lebrón,* supra. Por el contrario, viene obligada a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente en su solicitud puesto que, de incumplir, corre el riesgo de que se dicte sentencia sumaria en su contra, de la misma proceder en derecho. *Íd.*

En la oposición a una solicitud de sentencia sumaria, el promovido debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *Íd.* Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la Regla 36.3 de Procedimiento Civil. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.* Al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia y ser consciente en todo momento que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *Íd.*

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Rivera Rodríguez v. Rivera Reyes*, 168 DPR 193, 212 (2006). Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o aquellos en los que estén presentes cuestiones de interés público". *Íd.*, pág. 579.

Por otro lado, sabido es que, cuando un Tribunal emita una sentencia, especificará los hechos que fueron probados y consignará separadamente sus conclusiones de derecho. 32 LPRA Ap. V, R. 42.2. En lo pertinente al caso, si el Tribunal deniega una moción de sentencia sumaria, no concede todo el remedio solicitado o no resuelve la totalidad del pleito, la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, expresa que "será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos […]"Lo anterior simplifica el desfile de prueba en el juicio, pues los hechos no controvertidos se consideran probados. *Ramos Pérez v. Univisión*, 178 DPR 200, 221 (2010).

Además, y según dispuesto por el Tribunal Supremo de Puerto Rico, los criterios de revisión apelativa ante una sentencia sumaria son los siguientes: (1) no se puede considerar prueba no presentada ante el nivel de instancia; (2) no se puede adjudicar hechos materiales en controversia; (3) la revisión apelativa es *de*

*novo*; (4) se debe examinar el expediente de la manera más favorable hacia quien se opone a la solicitud de sentencia sumaria; (5) se debe observar que las mociones cumplan con los requisitos de la Regla 36 de Procedimiento Civil de 2009, *supra,* y lo discutido en *SLG Zapata Rivera v. JF Montalvo, 189 DPR 414 (2013)*; (6) debe exponer los hechos materiales controvertidos y los incontrovertidos si los hubiese; y (7) ante un caso donde no existan hechos materiales en controversia, el tribunal apelativo procederá a revisar *de novo* si el TPI aplicó correctamente el Derecho. *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118-119 (2015).

Asimismo, nuestro más Alto Foro ha señalado que:

[…] el Tribunal de Apelaciones debe: 1) examinar de *novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario; 2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de formas codificados en la referida Regla 36, *supra*; 3) **revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos**; 4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas,* 199 DPR 664, 679 (2018).

(Énfasis nuestro).

Conforme a lo anterior, nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria. *González Santiago v. Baxter Healthcare,* 202 DPR 281 (2019). A tal efecto, nuestra revisión es una *de novo,* y el análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra,* y su jurisprudencia interpretativa. *Íd.* De esta manera, si encontramos que los hechos materiales realmente están incontrovertidos, debemos revisar de

novo si el Tribunal de Primera Instancia aplicó correctamente el derecho. *Íd.*

**-B-**

En nuestra jurisdicción rige el principio de la autonomía contractual. Los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, la moral y al orden público. Art. 1207 del Código Civil de Puerto Rico de 1930[1], 31 LPRA ant. Sec. 3372.

También, es un principio prevaleciente en nuestra jurisdicción que las relaciones contractuales se rigen por el principio de *pacta sunt servanda.* El principio, consignado en el Artículo 1044 del Código Civil, 31 LPRA ant. Sec. 2994, dispone que "[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos".

Los contratos en Puerto Rico se perfeccionan por el mero consentimiento, y, desde ese momento, las partes se obligan al cumplimiento de lo expresamente pactado y a todas las consecuencias que, según su naturaleza, sean conformes a la buena fe, al uso y a la ley. Artículo 1210 del Código Civil, 31 LPRA ant. sec. 3375. Para que un contrato obligue a las partes a su cumplimiento, deben concurrir tres elementos: (1) consentimiento de los contratantes, (2) objeto y (3) causa. Artículo 1213 del Código Civil, 31 LPRA ant. sec. 3391.

Por otro lado, nuestro Tribunal Supremo ha reiterado que los contratos no están sujetos a interpretación cuando sus términos son claros y específicos y ha de hacerse de manera integral y no aisladamente, de manera que se busque su verdadero sentido,

---

[1] El Código Civil de Puerto Rico de 1930 fue derogado y sustituido por la Ley Núm. 55-2020, según enmendado, conocida como "Código Civil de Puerto Rico" de 2020. Hacemos referencia al Código Civil derogado por ser el derecho vigente y aplicable a la controversia ante nuestra consideración.

atendiendo a la interpretación de unas cláusulas con relación a otras. *Asoc. Res. Los Versalles v. Los Versailles,* 194 DPR 258, 267 (2015). Los términos de un contrato son claros cuando son suficientes en contenido para ser entendidos en un único sentido, sin dar lugar a dudas o controversias, sin diversidad de interpretaciones y sin necesitar, para su comprensión, razonamientos o demostraciones susceptibles de impugnación. *Corp. Del FSE v. Unión de Médicos,* 170 DPR 443, 450 (2007) citando a *Sucn. Ramírez v. Tribl. Superior,* 81 DPR 357 (1959).

Cónsono con lo anterior, el Artículo 1233, 31 LPRA ant. sec. 3471, establece que:

> Si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas.
>
> Si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquéllas.

Así, la intención de los contratantes es el criterio fundamental para fijar el alcance de las obligaciones contractuales. Por tal razón, la interpretación contractual se circunscribe en determinar cuál fue la intención real y común de las partes. Para ello, los tribunales han adoptado una metodología pragmática, la cual consiste en estudiar los actos anteriores, coetáneos y posteriores al momento de perfeccionarse el contrato. 31 LPRA ant. sec. 3472; *Aut. Puertos PR v. Total Petroleum et al.,* 210 DPR 16 (2022). Esto incluye otras circunstancias que puedan denotar o indicar la verdadera voluntad de los contratantes y el acuerdo que intentaron llevar a cabo. *VDE Corporation v. F&R Contractors,* 180 DPR 21, 34-35 (2010).

Al momento de interpretar un contrato, dicha interpretación tiene que ser cónsona con el principio de buena fe y no puede llevar a resultados incorrectos, absurdos e injustos. *S.L.G. Irizarry v. S.L.G. García,* 155 DPR 713, 727 (2001).

Finalmente, el Artículo 1235 del Código Civil dispone que "cualquiera que sea la generalidad de los términos de un contrato, no deberán entenderse comprendidos en él cosas distintas y casos diferentes de aquéllos sobre que los interesados se propusieron contratar". 31 LPRA ant. sec. 3473. Además, el Artículo 1236 del referido estatuto establece que cuando alguna cláusula del contrato admita diversos sentidos, deberá entenderse al más adecuado para que produzca el efecto. 31 LPRA ant. sec. 3474. En ese sentido, el Tribunal Supremo reiteró que el efecto más adecuado se refiere a la eficacia de la función económica del contrato y la finalidad que trata de alcanzar. *BPPR v. Sunc. Talavera*, 174 DPR 686, 708 (2008). Por lo que, cuando una disposición contractual no está reñida con la ley, la moral o el orden público, se le debe dar aplicación integral a lo convenido. *Corp. Del FSE v. Unión de Médicos*, supra, pág. 451.

**-C-**

Respecto al consentimiento prestado en los contratos, este será nulo cuando haya mediado error, violencia, intimidación o dolo. Artículo 1217 del Código Civil de 1930, 31 LPRA ant. sec. 3404. Para que el error invalide el consentimiento, tiene que recaer sobre la sustancia de la cosa que fue objeto del contrato, o sobre aquellas condiciones de la misma que principalmente hubiesen dado motivo a celebrarlo. Artículo 1218 del Código Civil de 1930, 31 LPRA ant. sec. 3405.

Los contratos que adolezcan de cualquiera de los vicios que invalidan alguno de los requisitos esenciales para su validez pueden ser anulados. Artículo 1252 del Código Civil de 1930, 31 LPRA ant. sec. 3511.

Atinente a la controversia ante nuestra consideración, se entiende que existe dolo cuando se induce a una parte a otorgar un contrato mediante maquinaciones insidiosas. *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 229 (2007). Según se ha definido,

el dolo "implica todo un complejo de malas artes, contrario a la honestidad e idóneo para sorprender la buena fe ajena, generalmente para beneficio propio, en que viene a reunirse el estado de ánimo de aquel que no sólo ha querido el acto, sino que, además, ha previsto y querido las consecuencias antijurídicas provenientes de él". *Íd.* También constituye dolo "el callar sobre una circunstancia importante relacionada con el objeto del contrato". *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 886 (2008).

Ahora bien, el dolo no se presume, la parte que lo reclame tiene que demostrarlo ya sea de forma indirecta o mediante evidencia circunstancial. *García Reyes v. Cruz Auto Corp., supra,* págs. 886-888.

Existen dos acepciones del dolo que están reguladas en el Código Civil: el dolo que ocurre en la etapa inicial de la contratación y el que se manifiesta al momento de la consumación del contrato. *S.L.G. Ortiz-Alvarado v. Great American,* 182 DPR 48, 63 (2011). La primera es motivo de anulabilidad de un contrato por haberse prestado consentimiento viciado, y la segunda, que se conoce como el dolo contractual, ocurre en el momento en que se incumple la obligación y está regida por el Artículo 1054 del Código Civil de 1930, 31 LPRA ant. sec. 3018, y el Artículo 1055 del mismo Código, 31 LPRA ant. sec. 3019. Cabe reseñar además que, no todo tipo de dolo produce la nulidad de un contrato. *García Reyes v. Cruz Auto Corp., supra.* Para que se produzca la nulidad del contrato, el dolo debe ser grave y no meramente incidental. *Pérez Rosa v. Morales Rosado, supra,* págs. 229-230.

El dolo incidental únicamente da lugar a una indemnización en daños y perjuicios por no tener una influencia decisiva sobre la obligación, pues el perjudicado sí tenía la voluntad de contratar, pero hubo engaño en el modo en que el contrato fue celebrado. *Íd.,*

pág. 230; *García Reyes v. Cruz Auto Corp., supra*, pág. 887. Es decir, el contrato de todas formas se hubiese celebrado, pero bajo condiciones diferentes. *García Reyes v. Cruz Auto Corp., supra.* Cuando el dolo es grave o causante, el acreedor no hubiese celebrado el contrato al conocer de su existencia. *S.L.G. Ortiz-Alvarado v. Great American, supra*, pág. 64.

Por último, en la determinación de si existe dolo que anula el consentimiento, se debe considerar, entre otras cosas, la preparación académica del perjudicado, así como su condición social y económica, y las relaciones y el tipo de negocios en que se ocupa. *García Reyes v. Cruz Auto Corp., supra,* pág. 887; *Citibank v. Dependable Ins. Co., Inc.*, 121 DPR 503, 519 (1988).

**III.**

El señor Lieberman solicita la revisión de la *Sentencia* notificada el 8 de agosto de 2023, mediante la cual el TPI declaró Ha Lugar la solicitud de sentencia sumaria instada por Oriental y desestimó la causa de acción. En síntesis, el apelante alega que, Oriental, deliberadamente, le ocultó la cantidad verdaderamente adeudada por Sublink, por concepto del Préstamo Comercial otorgado. Así, aduce que, Oriental actuó de manera dolosa durante el perfeccionamiento del contrato de compraventa suscrito con el señor Lieberman. Por lo cual, sostiene que procede la nulidad del contrato de compraventa y el resarcimiento en daños.

Por su parte, Oriental alega que, el señor Lieberman estuvo informado, en todo momento, de las particularidades del Préstamo Comercial. A su vez, señalan que, conforme a los términos y cláusulas del contrato, el señor Lieberman adquirió el Préstamo asumiendo todo riesgo.

Según expuesto, al momento de evaluar si procede una sentencia sumaria, los foros apelativos están en la misma posición que el TPI. Por ello, en el proceso de evaluar una sentencia sumaria

dictada por el TPI, los tribunales revisores están llamados a examinar el expediente *de novo* y verificar que las partes cumplieron con las exigencias de la Regla 36.3 de Procedimiento Civil, *supra*. De encontrar que los hechos materiales realmente están incontrovertidos, nos corresponde revisar *de novo* si el TPI aplicó correctamente el derecho. Examinados los escritos de las partes, procedemos a resolver.

Surge del expediente ante nuestra consideración, que, el señor Lieberman acudió ante Oriental con la intención de adquirir el Préstamo Comercial otorgado a Sublink, ya que el equipo comercial de Domino´s era parte colateral del referido préstamo. Como una primera oferta, el señor Lieberman le ofreció a Oriental la cantidad de $50,000.00 para adquirir el préstamo. Al momento, la suma adeudada por Sublink a Oriental totalizaba a $56,188.10, mientras que la cantidad de $53,970.65 era por concepto del principal. Por lo cual, Oriental le propuso al señor Lieberman una contraoferta por la cantidad de $54,000.00, suma que el apelante aceptó y por la cual adquirió el Préstamo Comercial.

El señor Lieberman ampara su reclamo en que, del *Proof of Claim* presentado por Oriental ante la Corte de Quiebras surgía la cantidad de $73,792.79, a razón del préstamo otorgado a Sublink. Cabe destacar que, el apelante formaba parte del caso de quiebras de Sublink, como presidente de las corporaciones Enigma Investment, Inc. y Elm, Inc. Conforme surge, con la autorización de la Corte de Quiebras, Sublink continuó abonando pagos a favor de sus acreedores. El señor Lieberman tenía conocimiento de que Sublink había emitido pagos a favor de las corporaciones. Por lo cual, resulta improcedente que desconociera sobre la posibilidad de que Sublink también hubiera emitido pagos a favor de Oriental.

Por otra parte, el "*Bill of Sale*" contenía las siguientes cláusulas y garantías:

5. BUYER hereby represents and warrants to SELLER, as of the date hereof and the Closing, that:

[...]

(v) **BUYER understands that the funds or property received by BUYER in respect of the SELLER´s interest may be less than the Purchase Price paid to SELLER, and BUYER, therefore, acknowledges that it shall have no recourse whatsoever to SELLER for any such deficiency** and that BUYER is financially capable of bearing a loss of the entire Purchase Price and of holding the SELLER´s interest for an indefinite period;

(vi) **Independent of and without reliance on SELLER, BUYER has received, reviewed and relied upon its own interpretation and understanding of and opinions with respect to the Commercial Loan and the Seller´s interest and other information determined by BUYER to be adequate concerning the business and financial condition of DEBTOR there under to make an informed decision about its decision to acquire the SELLER´s interest**;

(vii) The sale of the SELLER´s interest by SELLER to BUYER is without recourse to SELLER.

6. **BUYER will indemnify and hold SELLER harmless from and against all [l]oss, cost, damages, claims, liabilities, or expenses, including reasonable attorney fees and costs, in any way arising from or related to BUYER´s ownership of the Commercial Loan after Closing**. Said indemnity will survive the Closing.

7. This BILL OF SALE constitutes the entire agreement between BUYER and SELLER with respect to the subject matter of this BILL OF SALE and Commercial Loan. **BUYER represents and warrants to seller that it has made an independent investigation of all important aspects of the Commercial Loan and its status, and has entered the BILL OF SALE freely, without coercion and/or reservations, pursuant to his own wishes derived from said independent investigation.[2]**

(Énfasis nuestro).

Surge del contrato que, el señor Lieberman le representó a Oriental haber realizado una investigación independiente sobre las particularidades del préstamo. Aún más, el apelante perfeccionó el negocio jurídico con pleno conocimiento de que, al así hacerlo, estaría relevando a Oriental de toda responsabilidad.

El Artículo 1233 del Código Civil de 1930, *supra,* dispone que cuando los términos de un contrato son claros y no dejan duda

---

[2] Véase, Apéndice del recurso, a las págs. 30-32 (*Bill of Sale*).

sobre la intención de los contratantes, es decir no crean ambigüedades, se estará al sentido literal de sus cláusulas. Las precipitadas cláusulas contractuales no son contrarias a la ley, a la moral o al orden público y, por ende, tienen fuerza de ley, conforme al principio de *pacta sunt servanda.* Por todo lo cual, concluimos que el apelante, voluntariamente, suscribió el contrato de compraventa y relevó a Oriental de toda responsabilidad. Resulta forzoso concluir que no erró el TPI al desestimar la causa de acción.

**IV.**

Por los fundamentos expuestos, se *Confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones