EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Asociación de Residentes Los Versalles, Inc.<br><br>Peticionaria<br><br>v.<br><br>Los Versalles, S.E. y Otros<br><br>Recurridos | Certiorari<br><br>2015 TSPR 158<br><br>194 DPR \_\_\_\_ |

Número del Caso: CC-2015-328

Fecha: 2 de diciembre de 2015

Tribunal de Apelaciones:

      Región Judicial de Mayagüez

Abogado del Peticionario:

      Lcdo. Jorge C. Cruz Jové

Abogados de la Parte Recurrida:

      Lcdo. Carlos A. González Soler
      Lcda. María de Lourdes Rivera de Jiménez

Materia: Control de Acceso y Propiedad Horizontal – Pago de cuotas de mantenimiento por parte del desarrollador de la urbanización.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Residentes
Los Versalles, Inc.

    Peticionaria

        v.                  CC-2015-0328    *Certiorari*

Los Versailles, S.E. y Otros

    Recurridos

Opinión del Tribunal emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ.

San Juan, Puerto Rico, a 2 de diciembre de 2015.

Con el desarrollo de múltiples urbanizaciones con control de acceso y áreas comunes, han surgido una serie de interrogantes dirigidas a cuestionar la obligación de los desarrolladores de pagar las cuotas de mantenimiento por las áreas verdes y comunes de aquellas propiedades que son titulares y aún no se han vendido. A tono con ello, distintas asociaciones de residentes han instado pleitos requiriendo el pago a las desarrolladoras de estas cuotas por las unidades que son titulares, independiente de si éstas se han o no

desarrollado.[1] Hoy nos corresponde arrojar luz a estas interrogantes.

En particular, la controversia ante la consideración de este Tribunal exige dictaminar si conforme a una escritura de condiciones restrictivas la desarrolladora de una urbanización con acceso controlado se obligó a cumplir con el pago de las cuotas de mantenimiento una vez comenzaron las gestiones administrativas y financieras de la asociación de residentes, es decir, desde su fecha de constitución. A tales efectos, concluimos que ello dependerá de si la desarrolladora es la titular de la residencia conforme al Reglamento y la escritura suscrita. Veamos.

I

El proyecto residencial de la Urbanización Los Versalles (Urbanización) localizado en Mayagüez, Puerto Rico, fue edificado por Los Versailles, S.E. (la Desarrolladora o recurrida). Éste consta de 109 solares residenciales, calles y áreas comunales. El 21 de julio de 1998 la Desarrolladora incorporó a la Asociación de Residentes Los Versalles, Inc. (Asociación o peticionaria), con el propósito de que fungiera como administradora de la Urbanización y velara por el cumplimiento de los acuerdos,

_____

[1]Véase M. García Cárdenas, Derecho de Urbanizaciones: servidumbres en equidad, controles de acceso e instalaciones vecinales, San Juan, InterJuris, 2010, págs. 94-97, 127-128 y 142. Además, y a modo de ejemplo, Asociación de Residentes Sabanera del Río v. Prisa, S. E., KLAN201100185.

descritos más adelante, que se incluyeron en la constitución de la Urbanización con facilidades de control de acceso.

Particularmente, el 5 de abril de 1999 se otorgó la Escritura Núm. 7 (Escritura) en torno a las condiciones restrictivas que regirían la Urbanización. A su vez, a ésta se le incorporó el Reglamento de la Asociación de Residentes Los Versalles, Inc. (Reglamento), el cual había sido suscrito el 31 de marzo del mismo año. La primera unidad fue vendida el 27 de abril de 1999 y la administración de la Urbanización se traspasó a los titulares el 20 de noviembre de 2008.

En lo pertinente a la controversia de autos, es menester destacar que el referido Reglamento aplica a "todo el terreno, edificaciones, dependencias de la urbanización, a todos los titulares de los solares presentes y futuros, así como a los arrendatarios, huéspedes, visitas, invitados, empleados", entre otros allí enumerados. Art. 3 del Reglamento de la Asociación de Residentes Los Versalles, Inc. De igual forma, éste apresta que la Asociación es el órgano supremo de la Urbanización y está compuesta "por [t]odos los titulares de los solares que integran 'La urbanización' y por Versalles, S.E., sus sucesores, agentes, cesionarios y cualquier otra persona o personas que esta designe". Art. 5 del Reglamento de la Asociación de Residentes Los Versalles, Inc. En este mismo articulado, se establece que la Desarrolladora conservaría su carácter de miembro hasta tanto no renunciara

voluntariamente o hasta el día primero de enero de 2010, lo que ocurriera primero.

Por otra parte, en el Art. 28 del mismo Reglamento, se consigna que la Desarrolladora debe ser considerada como titular y dueña. El mencionado artículo dispone de la siguiente manera:

> En [t]odo momento Los Versalles, S.E., sus sucesores, agentes y/o cesionarios; será considerada **como la titular y dueña de la totalidad de los solares y unidades residenciales** que componen la urbanización hasta tanto no traspase esos derechos a los compradores y estos sean registrados en el libro de titulares. Art. 28 del Reglamento de la Asociación de Residentes Los Versalles, Inc. (Énfasis suplido).

Además, el Art. 44 del Reglamento bajo estudio establece la obligación que tienen todos los titulares de aportar la cantidad de $150 al mes por concepto de los gastos comunes de administración y mantenimiento de la Urbanización. Particularmente, decreta lo que sucede:

> Los Titulares están obligados a contribuir proporcionalmente a los gastos para la administración, conservación, reparación y uso de los elementos comunes de 'La urbanización', así como a todos los demás gastos ordinarios u extraordinarios que fueran legítimamente acordados. Art. 44 del Reglamento de la Asociación de Residentes Los Versalles, Inc.

Basados en estas disposiciones reglamentarias, en el 2012 la Asociación presentó una reclamación contra la Desarrolladora ante el Tribunal de Primera Instancia. En ella, alegó que la Desarrolladora incumplió con su obligación de pagar la referida cuota de mantenimiento, lo cual le generó una deuda ascendente a $1,862,136.75.

Especificó que esta última es por razón de los solares y unidades de vivienda de los cuales la Desarrolladora era titular desde el 1 de abril de 1999 hasta que respectivamente las traspasó a sus compradores. Asimismo, la Asociación le requirió los intereses por esta cantidad y los gastos de honorarios, según contemplado por el Reglamento en aquellos casos en los que se tenga que requerir el cumplimiento de la obligación de la cuota de mantenimiento por la vía judicial. Solicitó, además, la recisión y la resolución de un préstamo que le fue otorgado por A&P Capital Corporation, alegado *alter-ego* de la Desarrolladora, para sufragar los gastos de administración y mantenimiento en tanto se culminaba la construcción y se concretaban las ventas de todas las unidades residenciales de la Urbanización.

Luego de varios trámites procesales, el 13 de febrero de 2012 la Desarrolladora presentó una *Moción en Solicitud de Sentencia Sumaria,* en la cual alegó que los gastos de administración y mantenimiento solamente le eran exigibles desde que cada solar tuvo una unidad residencial y fue inscrito ante el Registro de la Propiedad. Sustentó su alegato en las disposiciones reglamentarias antes reseñadas y en el segundo inciso de la parte expositiva de la Escritura, el cual particularizamos a continuación:

> **SEGUNDO: PROPÓSITO:** En el antes descrito inmueble **VERSALLES, S.E.** está desarrollando y construyendo un proyecto de solares con unidades residenciales unifamiliares, de aquí en adelante solar, a ser conocido con el nombre de **LOS VERSALLES.** Con el expreso y deliberado propósito

de proteger la buena calidad de vida y el bienestar de los residentes así como el hacer prevalecer el carácter residencial, el valor y la armonía en el uso futuro del inmueble y las estructuras a construirse, se establece sobre el antes indicado inmueble las condiciones restrictivas o servidumbres en equidad que más adelante se indican para beneficio de todos los adquirentes y futuros dueños de los solares. Apéndice del Recurso de *Certiorari,* Escritura Número Siete (7), pág. 427. (Énfasis en el original).

La Desarrolladora adujo que de la precitada disposición se desprende que para efectos de este proyecto residencial, el concepto solar solamente se constituye desde que en el terreno se edifica la unidad de vivienda para el cual fue concebido. Por consiguiente, arguyó que solamente podía ser considerada como una titular que adeudaba los gastos de mantenimiento, desde el momento en que se constituyó una unidad residencial en los solares correspondientes y éstos fueron inscritos ante el Registro de la Propiedad.

El Tribunal de Primera Instancia acogió el razonamiento esbozado por la Desarrolladora y el 24 de julio de 2012 notificó una *Sentencia Sumaria Parcial y Orden.* Concluyó que de la Escritura surge que un solar solamente puede ser considerado como tal desde que en éste se incluye una unidad residencial unifamiliar. Es decir, cuando en la Escritura y en el Reglamento se utilizaba el concepto solar, esto implicaba que la unidad debía estar construida y lista para la venta; sujeto a que la agencia pertinente otorgara los permisos de uso. De lo contrario, no podía entenderse que la unidad estaba lista para su venta.

Luego de habérsele denegado la reconsideración presentada, la peticionaria recurrió al Tribunal de Apelaciones. Adujo que el foro primario incidió al adoptar una interpretación contraria a la Escritura y al Reglamento de la Urbanización, además de que erró al no utilizar como fuente persuasiva las interpretaciones de este Tribunal en torno a la Ley de Propiedad Horizontal, *infra*, en controversias virtualmente idénticas. En esencia, solicitó que se determinara que de acuerdo a las disposiciones reglamentarias aplicables, la Desarrolladora debía ser considerada como una titular y, por tanto, estaba sujeta al pago de las cuotas de mantenimiento desde que comenzaron las obligaciones administrativas y financieras de la Asociación.

Mediante Sentencia notificada el 11 de diciembre de 2014 el foro apelativo intermedio confirmó el dictamen apelado y concluyó que acoger el reclamo de la Asociación, haría imposible el desarrollo de proyectos como el de autos en la Isla. Ello, pues las desarrolladoras se verían obligadas a contribuir con los gastos de mantenimiento desde el comienzo de la construcción del proyecto, lo cual constituía una carga muy onerosa para esta industria.

Inconforme, la peticionaria presentó una reconsideración que también le fue denegada,[2] y

---

[2]De la Resolución, notificada el 27 de marzo de 2015, en la que se denegó la reconsideración presentada por la Asociación, surge que el Juez González Vargas "reconsideraría a los fines de acoger el criterio de unidad construida y no vendida como el factor para que pueda ser exigible al desarrollador la cuota de mantenimiento en lugar de la fecha en la que se expida el permiso de uso, conforme al caso *Asoc. Residentes Sabana del Río v. PRISA, SE,* 2012

posteriormente recurrió ante nos. Reprodujo los argumentos esgrimidos ante los foros apelados y nos solicitó que expidiéramos el auto de *certiorari* y revocáramos el dictamen apelado. El 26 de junio de 2015 emitimos una Resolución en la que otorgamos un término para que la parte recurrida mostrara causa por la cual no debía expedirse el auto presentado. Ésta compareció mediante documento intitulado *Moción en Cumplimiento de Orden para Mostrar Causa* y reprodujo los argumentos acogidos por los foros recurridos. A tales efectos, contando con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver conforme a derecho.

II

A. **La Ley de Control de Acceso y la Ley de Propiedad Horizontal**

La Ley Núm. 21 de 20 de mayo de 1987, según enmendada, conocida como la Ley de Control de Acceso de 1987, 23 LPRA sec. 64 *et seq.* (Supl. 2014), está concebida con el propósito de autorizar a que los municipios de Puerto Rico concedan permisos para el control del tráfico de vehículos de motor y el uso público de las calles en urbanizaciones y comunidades públicas y privadas. Por consiguiente, en este contexto se legisló para que el consejo o la junta pudieran imponer una cuota para cubrir los costos y gastos de instalación y mantenimiento del sistema. Véase 23 LPRA sec. 64d-3. En este sentido, el estatuto contempla la obligación

_____

TA 578." Apéndice del Recurso de *Certiorari*, *Resolución del Tribunal de Apelaciones*, págs. 3-4.

de pago sobre los propietarios de las fincas inscritas, los que autoricen la solicitud, los adquirientes de una finca ubicada en este tipo de urbanización, toda persona que advenga dueña del inmueble cuando la solicitud fue hecha por el desarrollador, urbanizador o constructor, y todo propietario que se haya comprometido a tal pago. *Íd.*

Empero, la Ley de Control de Acceso no contempla la situación de autos en la que se dilucida desde cuándo surge la responsabilidad del desarrollador de una urbanización, si alguna, de cumplir con la obligación del pago de la cuota de mantenimiento.

Ante tal realidad, la Asociación plantea que la Ley de Propiedad Horizontal, Ley Núm. 104 de 23 de junio de 1958, según enmendada, 31 LPRA sec. 1291 *et seq.* (Supl. 2014) resulta persuasiva para la disposición de la controversia planteada. Específicamente, lo resuelto por este Tribunal en Asoc. Cond. Balcones S.Ma. v. Los Frailes, 154 DPR 800 (2001). No les asiste la razón.

En Asoc. Cond. Balcones S.Ma. v. Los Frailes, *supra*, se dilucidó "si el titular de un apartamento proyectado y no construido está en la obligación legal de contribuir a los gastos comunes del condominio mediante el pago de cuotas de mantenimiento". *Íd.*, pág. 809. Específicamente, este Tribunal resolvió que el "criterio crítico para imponer dicha responsabilidad es la titularidad que sobre el apartamento [sic] se ostenta y no el estado físico de éste". *Íd.*, pág. 817-819. Para ello, se descartó que la responsabilidad del desarrollador comenzaba con la emisión

del permiso de uso de la agencia administrativa correspondiente.

Ahora bien, las expresiones de este Tribunal se limitaron al contexto de la Ley de Propiedad Horizontal, que no rige, necesariamente, el desarrollo de urbanizaciones con control de acceso. La Ley de Control de Acceso regula el acceso a las calles de una determinada urbanización. Así, el arreglo interno de la copropiedad de los bienes comunes dentro de esa urbanización se regirá de acuerdo con el Código Civil o el acuerdo entre las partes.

## B. Interpretación de Contratos

Como es ampliamente conocido, en nuestra jurisdicción rige el principio de libre contratación. Los contratos nacen desde que las partes consienten en dar alguna cosa o prestar algún servicio. Art. 1206 del Código Civil de Puerto Rico, 31 LPRA sec. 3371. Cónsono con este principio, este Tribunal ya ha interpretado que la constitución y el reglamento de una asociación privada constituye un contrato entre la asociación y sus miembros. Logia Adelphia v. Logia Adelphia, 72 DPR 488, 496 (1951). *Véase*, además, Amador v. Conc. Igl. Univ. de Jesucristo, 150 DPR 571, 582 (2000).

De esta forma, cuando las partes contratantes emprenden un negocio jurídico, pueden incluir las cláusulas y condiciones que tengan a bien considerar, siempre que éstas no sean contrarias a la ley, la moral y el orden público. Art. 1207 del Código Civil de Puerto Rico, 31 LPRA sec. 3372; *véanse*, además, Cond. Prof. S.J.H. Centre v. P.R.F., Inc., 133 DPR 488, 503 (1993); BPPR v. Sucn. Talavera, 174

DPR 686, 693 (2008). Así pues, las obligaciones contraídas conforme a nuestro ordenamiento, tendrán fuerza de ley entre los contratantes y deberán ser cumplidas a tenor de los mismos. Art. 1044 del Código Civil de Puerto Rico, 31 LPRA sec. 2994. Es decir, una vez concurren las condiciones esenciales para su validez, los tribunales no pueden relevar a una parte de cumplir con lo que se obligó a dar o a hacer mediante el mismo. De Jesús González v. A.C., 148 DPR 255, 271(1999).

Acorde con lo anterior, es principio reiterado que un contrato no está sujeto a interpretación cuando sus términos son claros y específicos. Es decir, cuando un acuerdo no es ambiguo ni deja margen a dudas, las partes están vinculadas por el mismo y así deberá ser aplicado. Art. 1233 del Código Civil de Puerto Rico, 31 LPRA sec. 3471. *Véase,* además, Rivera Rodríguez v. Rivera Reyes, 168 DPR 193, 212 (2006).

Ahora bien, en caso de que se requiera interpretación, el Código Civil de Puerto Rico establece unas reglas básicas que regirán supletoriamente para guiar el análisis de la disposición en cuestión. *Véanse* Arts. 1233-1241 del Código Civil de Puerto Rico, 31 LPRA secs. 3471-3479. En términos generales, estos preceptos establecen que cuando no podemos depender del sentido literal de las palabras, debemos recurrir a interpretar la intención que tuvieron las partes al contratar. Al respecto, este Tribunal ha expuesto que "[l]a intención de las partes es el criterio fundamental dispuesto en el Código Civil para fijar el alcance de las obligaciones contractuales. Es tan fundamental este criterio

de intención que el Código proclama su supremacía al disponer que la intención evidente de las partes prevalecerá sobre las palabras, aun cuando éstas parecieran contrarias a aquélla". Merle v. West Bend Co., 97 DPR 403, 409-410 (1969). A tales efectos, el juzgador deberá considerar los actos anteriores, coetáneos y posteriores, así como todas las circunstancias que concurrieron al momento de la contratación. No obstante, deberá ser cauteloso y no encontrar "en él cosas distintas y casos diferentes de aquéllos sobre que los interesados se propusieron contratar". Art. 1235 del Código Civil de Puerto Rico, 31 LPRA sec. 3473. Es pues, función del juzgador armonizar el conjunto de los términos del contrato con la verdadera intención de las partes. Carrillo Norat v. Camejo, 107 DPR 132, 138 (1978).

A tenor con los principios discutidos y a los fines de atender la controversia de marras, procedemos a elaborar en torno al derecho aplicable a la responsabilidad del desarrollador de pagar las cuotas de mantenimiento en el contexto de una urbanización con control de acceso.

B. **La obligación del desarrollador de pagar las cuotas de mantenimiento**

De manera general, el Código Civil de Puerto Rico establece que "[t]odo copropietario tendrá derecho para obligar a los partícipes a contribuir a los gastos de conservación de la cosa o derecho común", pudiendo estar exento sólo aquel que renuncie a la parte que le pertenece. Art. 329 del Código Civil de Puerto Rico, 31 LPRA sec. 1274.

A pesar de que esta norma establece, en términos generales, la obligación que tiene todo copropietario de contribuir con los gastos de conservación de una cosa común, en nuestra jurisdicción, como anticipamos, no hay una disposición estatutaria que establezca el momento en que los desarrolladores son copropietarios y advienen responsables de pagar por las cuotas de mantenimiento en las urbanizaciones.

En ausencia de un estatuto que regule o suplemente expresamente el derecho aplicable a la controversia de autos, lo que corresponde es recurrir directamente al contrato suscrito entre las partes para dilucidar si el Tribunal de Apelaciones actuó correctamente al confirmar el dictamen del foro primario en cuanto a que la Desarrolladora solamente estaba obligada a pagar las cuotas de mantenimiento desde que cada solar tenía una unidad de vivienda edificada y estaba lista para la venta con su correspondiente permiso de uso.

## III

A tenor con los acuerdos suscritos entre las partes y el derecho expuesto, nos es forzoso concluir que los foros apelados incidieron en su determinación. Veamos.

De acuerdo al Art. 44 del Reglamento, **todos los titulares** están obligados a contribuir proporcionalmente con los gastos de administración, conservación, reparación y uso de los elementos comunes. Por su parte, el Art. 28 del referido Reglamento diáfanamente establece que en "[t]odo momento Los Versalles, S.E., sus sucesores, agentes y/o

cesionarios; será considerada como **la titular y dueña** de la totalidad de los solares y unidades residenciales que componen la urbanización hasta tanto no traspase esos derechos a los compradores".

De tales disposiciones emana el hecho de que los estatutos que rigen la administración de la Urbanización, establecen que la Desarrolladora es una titular y como tal, está sujeta a la obligación del pago de la cuota de mantenimiento impuesta por el mismo cuerpo estatutario. Tal compromiso, a su vez, está contemplado en el Art. 329 del Código Civil, *supra*, que impone a todo copropietario el deber de contribuir a los gastos de conservación de la cosa o derecho común.

Por otra parte, en ninguno de los estatutos que rige la administración se impone el requisito que pretende agregar la parte recurrida, en tanto sostiene que sólo se convirtió en titular con obligación de pagar cuando en cada solar que poseía se edificó la unidad con su correspondiente permiso de uso y se inscribió ante el Registro de la Propiedad. No nos persuade el argumento que intenta hilvanar la Desarrolladora en cuanto a que esta interpretación se desprende del propósito consignado en el segundo inciso de la Escritura de constitución de la Urbanización. En particular, cuando se expuso que en el "inmueble VERSALLES, S.E. [se] está desarrollando y construyendo un proyecto de solares con unidades residenciales unifamiliares, de aquí en adelante solar". *Véase* Apéndice del Recurso de *Certiorari*, Escritura Número Siete (7), pág. 427. De esta expresión

solamente se puede colegir que el propósito del proyecto residencial era el desarrollo de solares donde ubicarían unidades residenciales familiares. De ninguna manera, se puede sostener la interpretación acogida por los foros recurridos, en cuanto a que de la disposición citada se desprende que para propósitos de este proyecto "la descripción de lo que significa 'solar' en la escritura número siete es a un proyecto de solares con unidades residenciales unifamiliares". Apéndice del Recurso de *Certiorari, Sentencia Sumaria Parcial y Orden*, pág. 221. (Énfasis omitido). Esto, además de ser ajeno al sentido literal de las palabras, es disonante a la intención que dimana de la disposición interpretada por los foros recurridos.

Recordemos que el inciso interpretado se refiere al propósito de la constitución de la Escritura y no a un intento de los contratantes por definir conceptos y mucho menos atribuir el significado que le otorgaron los foros recurridos. No podemos perder de perspectiva que los tribunales no pueden acoger una interpretación contraria al sentido literal de las palabras suscritas por los contratantes, o de la intención manifiesta de éstos, con el solo propósito de relevar a una parte de su cumplimiento. El hecho de que la aplicación de los términos y condiciones del contrato pueda ser en detrimento para una de las partes, no es motivo para alterar o ignorar lo allí consignado por los contratantes.

A tenor con el análisis expuesto, es menester de este Tribunal concluir que los foros recurridos erraron al determinar que de la Escritura en controversia se desprende que el concepto solar incluye la estructura designada para una unidad familiar y, por tanto, la obligación de la Desarrolladora solamente surgía desde que se efectuó tal construcción y la unidad estaba lista para la venta. Tal interpretación no se sostiene a la luz del texto en cuestión.

Por consiguiente, prevalecen las disposiciones reglamentarias discutidas que le imponen a todo titular la obligación de cumplir con el pago de las cuotas de mantenimiento de la Urbanización, siendo la Desarrolladora considerada como la titular de los solares y las unidades residenciales mientras éstas no fueron traspasadas a sus compradores. Esta obligación quedó constituida desde el momento en que comenzaron las gestiones administrativas y financieras de la Asociación, lo cual corresponde al día en que se entregó la primera casa del proyecto a su comprador. *Véase* Art. 51 del Reglamento de la Asociación de Residentes Los Versalles, Inc.

IV

Por los fundamentos expuestos, se expide el auto de *certiorari*, se revoca a los foros recurridos y se devuelve el caso al Tribunal de Primera Instancia para la

continuación de los procedimientos, a tenor con lo aquí resuelto.


                                        Luis F. Estrella Martínez
                                              *Juez Asociado*

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Residentes
Los Versalles, Inc.

    Peticionaria

        v.                           CC-2015-0328   *Certiorari*

Los Versailles, S.E. y Otros

    Recurridos

SENTENCIA

San Juan, Puerto Rico, a 2 de diciembre de 2015.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se expide el auto de *certiorari*, se revoca a los foros recurridos y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos, a tenor con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez y la Jueza Asociada Oronoz Rodríguez concurren sin opiniones escritas. El Juez Asociado señor Feliberti Cintrón está inhibido.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo