ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| THE MONEY HOUSE, INC.<br><br>Peticionario<br><br>v.<br><br>LA SUCESIÓN DE ROMUALDO RIVERA ANDRINI Y OTROS<br><br>Recurridos | TA2025CE00040 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Guaynabo<br><br>Caso Número: GB2022CV00697<br><br>Sobre: Ejecución De Hipoteca |

Panel integrado por su presidenta, la Jueza Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm.

Prats Palerm, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 31 de julio de 2025.

Comparece The Money House, Inc. ("Money House" o "Peticionario") mediante *Petición de Certiorari* y nos solicita que revisemos la *Orden* emitida el 23 de mayo de 2025 y notificada el 27 de mayo de 2025, por el Tribunal de Primera Instancia, Sala Superior de Guaynabo ("TPI"). En virtud del referido dictamen, el TPI denegó la solicitud de retiro de fondos consignados instada por Money House, debido a una incongruencia entre el balance reclamado y la cuantía adeudada establecida mediante Sentencia.

Por los fundamentos que expondremos a continuación, se expide el auto de *certiorari* y se *Revoca* el dictamen recurrido.

## I.

El 19 de julio de 2022, Money House presentó una *Demanda* sobre ejecución de hipoteca en contra de los integrantes de la Sucesión de Romualdo Rivera Andrini (en conjunto, "Recurridos"). Sostuvo que, el 15 de marzo de 2016, el deudor original, el difunto Romualdo Rivera Andrini ("señor Rivera Andrini"), obtuvo un préstamo revertido (*reverse mortgage*). Expuso que, como garantía el señor Rivera Andrini suscribió un *Primer*

*Pagaré Hipotecario con Tasa de Interés Ajustable* ("Pagaré"), a favor de Money House, por la suma principal de **$280,500.00**, a razón de 4.225% de interés anual. Añadió que, según los términos acordados, al fallecer el deudor original, el préstamo garantizado por la hipoteca se encontraba vencido y pagadero. Siendo así, manifestó que la Sucesión adeudaba las siguientes cantidades: $113,696.94, por concepto de principal; $41,499.09, por concepto de intereses, los cuales continuaban acumulándose a razón de 3.284% anual; y otros gastos acumulados.

Tras los trámites de rigor, el 6 de marzo de 2024, notificada el 29 de julio de 2024, el TPI emitió una *Sentencia* en rebeldía. Mediante la referida determinación, el foro de instancia declaró Ha Lugar la Demanda y le ordenó a la Sucesión a pagar, mediante la venta de la propiedad en pública subasta, las siguientes cantidades:

> [L]la suma de **$113,696.94** por concepto de principal, más la suma de **$56,832.12** en intereses acumulados al 31 de enero de 2024 y los cuales continúan acumulándose a razón de 3.284% anual hasta su total y completo pago; más la sumas de **$19,299.08** en seguro hipotecario; **$456.85** en seguro; **$88.90** de contribuciones; **$500.00** de tasaciones; **$500.00** de inspecciones; **$405.00** en tarifas de título; más la cantidad de 10% del pagaré original en la suma de **$28,050.00**, para gastos, costas y honorarios de abogado.[1]

Consecuentemente, la venta en pública subasta fue celebrada el 21 de enero de 2025, donde se adjudicó la buena pro a Mildred Méndez López, por la cantidad de **$215,050.00**, los cuales fueron consignados en la Unidad de Cuentas del TPI. El 22 de enero de 2025, Money House presentó una *Moción Solicitando el Retiro de Fondos Consignados Producto de la Venta Judicial*, por el monto en que fue vendida la propiedad.

El 24 de febrero de 2025, notificada el 26 de febrero de 2025, el TPI emitió una *Orden* de Confirmación de Venta Judicial. Ese mismo día, también notificada el 26 de febrero de 2025, el foro de instancia dictaminó otra *Orden* en relación con la solicitud de retiro de fondos. En virtud del

---

[1] Apéndice del recurso, SUMAC, Entrada Núm. 48, pág. 1.

referido dictamen, le ordenó al peticionario lo siguiente: "[p]rovea el balance de cancelación a la fecha de la subasta".[2]

Así las cosas, el 3 de marzo de 2025, Money House presentó una *Moción en Cumplimiento de Orden*, en virtud de la cual presentó el balance de cancelación, el cual ascendía a **$220,796.21**. Sin embargo, el 7 de marzo de 2025, el TPI dictó una *Orden* en la que manifestó que "[e]l balance de cancelación requerido debe, naturalmente, reflejar el desglose de las partidas".[3]

El 28 de marzo de 2025, Money House presentó el desglose de las partidas adeudadas hasta ese mismo día, el cual reflejó balance de cancelación total de **$227,464.06**. En esa misma fecha, notificada el 31 de marzo de 2025, el foro de instancia dictó una *Orden* en la cual únicamente indicó: "[r]efiérase a orden de 24 de febrero de 2025".[4]

Siendo así, el 3 de abril de 2025, el peticionario notificó una *Moción en Cumplimiento de Orden y Reiterando Solicitud para el Retiro de Fondos Consignados Producto de la Venta Judicial*. Mediante el referido escrito, anejó el desglose de las partidas adeudadas hasta el 21 de enero de 2025, el cual totalizó **$221,109.13**.

En ese día, notificada el 7 de abril de 2025, el TPI dispuso lo siguiente mediante *Orden*:

> La tasa de interés reclamada en el balance de cancelación no guarda correspondencia con la sentencia de 6 de marzo de 2024. A su vez, el balance reclamado en el balance de cancelación no desglosado no guarda correspondencia con el balance de cancelación desglosado, más ambos "payoff statements" constan emitidos por entidades diferentes.[5]

El 9 de abril de 2025, Money House instó una *Moción Aclaratoria y Reiterando Solicitud para el Retiro de Fondos Consignados Producto de la Venta Judicial*. Sostuvo que el interés no guardaba relación con la Sentencia porque el pagaré es uno con una tasa de interés ajustable y, como resultado, está sujeta a cambios. Particularizo que, al momento de

---

[2] Apéndice del recurso, SUMAC, Entrada Núm. 86, pág. 1.
[3] Apéndice del recurso, SUMAC, Entrada Núm. 88, pág. 1.
[4] Expediente del TPI, SUMAC, Entrada Núm. 93, pág. 1.
[5] Apéndice del recurso, SUMAC, Entrada Núm. 95, pág. 1.

la venta judicial, la tasa de interés era de 8.33%. Manifestó, además, que las partidas desglosadas incluían ciertos gastos relacionados a la venta, tales como la publicación del aviso de subasta y el envío por correo certificado del tal aviso. Asimismo, explicó que el balance de cancelación no desglosado fue emitido por el acreedor hipotecario, Money House, mientras que el balance de cancelación desglosado por el *servicer* o agente de servicio de Money House, PHH Mortgage. Como corolario, señaló que los recurridos realmente adeudan la cantidad de **$221,109.13**, por concepto de principal, intereses y otros cargos.

Posteriormente, el 16 de abril de 2025, notificada el 21 de abril de 2025, el TPI dictaminó una *Orden* en la cual expresó que:

> En cuanto a la inconformidad con los términos de la sentencia, debe indicar el remedio solicitado. En torno a las otras partidas a las que alude, conveniente detalle en el balance de cancelación, conforme sentencia de 6 de marzo de 2024.[6]

El 6 de mayo de 2025, Money House presentó una *Moción de Retiro de Fondos*. Arguyó que, conforme a los términos y condiciones del pagaré, las partes pactaron una tasa de interés variable o ajustable. A raíz de lo anterior, reiteró que debido a ello la tasa de interés a la fecha de la Sentencia y a la fecha de la subasta era distinta.

En respuesta, el 12 de mayo de 2025, notificada el 14 de mayo de 2025, el TPI indicó: "[r]efiérase a orden de 16 de abril de 2025". Inconforme, el 16 de mayo de 2025, el peticionario sometió una *Moción de Reconsideración*. El 23 de mayo de 2025, notificada el 27 de mayo de 2025, el TPI emitió una *Orden* mediante la cual, nuevamente, dispuso: "[r]efiérase a orden de 16 de abril de 2025".

Insatisfecho aún, el 26 de junio de 2025, Money House acudió ante nos mediante *Petición de Certiorari*. El peticionario realizó el siguiente señalamiento de error:

> **Erró el Tribunal de Primera Instancia al no hacer valer lo determinado en una Sentencia dictada, en la que se le**

---

[6] Apéndice del recurso, SUMAC, Entrada Núm. 97, pág. 1.

**condenó a la parte demandada al pago de lo adeudado, acorde con el contrato suscrito entre las partes.**

El 7 de julio de 2025, notificada el 8 de julio de 2025, dictamos una *Resolución* mediante la cual le concedimos a la parte recurrida un término de diez (10) días para presentar su posición en cuanto al recurso. Transcurrido dicho término, procedemos a resolver sin la comparecencia de los recurridos.

## II.

### -A-

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. En esencia, se trata de un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *Rivera et als. v. Arcos Dorados,* 212 DPR 124 (2023); *800 Ponce de León Corp. v. American International Insurance,* 205 DPR 163 (2020); *Medina Nazario v. McNeil Healthcare, LLC,* 194 DPR 723, 728-729 (2016); véase, además, Art. 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491. Por tanto, la expedición del auto de *certiorari* descansa en la sana discreción del tribunal revisor. *Íd.; IG Builders et al v. BBVAPR,* 185 DPR 307, 337-338 (2012).

La Regla 40 del Reglamento del Tribunal de Apelaciones establece los criterios que este foro tomará en consideración para ejercer prudentemente su discreción para expedir o no un recurso de *certiorari,* a saber:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para analizar el problema.
C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025).

De otra parte, este Tribunal solo intervendrá con las determinaciones discrecionales del Tribunal de Primera Instancia, cuando se demuestre que hubo un craso abuso de discreción, prejuicio, parcialidad o error manifiesto. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). En el ámbito jurídico la discreción ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013). La discreción se nutre de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia. *Íd.* Por lo anterior, un adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. *Umpierre Matos v. Juelle Albello*, 203 DPR 254, 275 (2019); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**-B-**

La *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico,* Ley Núm. 210-2015, según enmendada, 30 LPRA sec. 6001 *et seq.* ("Ley 210-2015"), regula el procedimiento para la ejecución de hipotecas. En lo aquí pertinente, el referido estatuto establece que:

> Los acreedores hipotecarios posteriores y los titulares de derechos reconocidos en sentencias finales y firmes debidamente anotados o asegurados mediante embargo al crédito que se ejecuta, podrán radicar dentro del procedimiento de ejecución una moción juramentada estableciendo la cuantía del crédito que se les adeuda.

Art. 98 de la Ley 210-2015, 30 LPRA sec. 6135

De igual modo, el Art. 99 de la Ley 210-2015, 30 LPRA sec. 6136, indica que:

> Una vez se declare con lugar la demanda y advenga final y firme la sentencia dictada en el procedimiento de ejecución de hipoteca, el tribunal ordenará, a instancia del ejecutante, la expedición del correspondiente mandamiento, para que el alguacil proceda a la subasta de los bienes hipotecados.

Asimismo, celebrada la venta en pública subasta, el Art. 108 de la Ley Núm. 210 de 8 de diciembre de 2015, según enmendada, conocida como "*Ley de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*" ("Ley 210-2015"), 30 LPRA sec. 6145, establece que:

> Si se confirma la venta, **el precio de venta se destinará, sin dilación, al pago del crédito hipotecario del acreedor**. El sobrante lo depositará el alguacil en la secretaría del tribunal para que éste disponga lo que proceda respecto a los acreedores posteriores siguiendo el orden o rango que cada uno tenga en relación con el crédito ejecutado.
>
> (Énfasis suplido)

En el caso del remanente, si alguno y si no existiera crédito o responsabilidad posterior, se entregará al deudor o al tercer poseedor. *Íd.*

**-C-**

En nuestra jurisdicción rige el principio de la autonomía contractual. Los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, la moral y al orden público. Art. 1232 del Código Civil, 31 LPRA sec. 9753.

También, es un principio prevaleciente en nuestra jurisdicción que las relaciones contractuales se rigen por el principio de *pacta sunt servanda*. El principio, consignado en el Artículo 1233 del Código Civil, 31 LPRA sec. 9754, dispone que "[l]o acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley".

Nuestro Tribunal Supremo ha reiterado que los contratos no están sujetos a interpretación cuando sus términos son claros y específicos y ha de hacerse de manera integral y no aisladamente, de manera que se

busque su verdadero sentido, atendiendo a la interpretación de unas cláusulas con relación a otras. *Asoc. Res. Los Versalles v. Los Versailles*, 194 DPR 258, 267 (2015). Los términos de un contrato son claros cuando son suficientes en contenido para ser entendidos en un único sentido, sin dar lugar a dudas o controversias, sin diversidad de interpretaciones y sin necesitar, para su comprensión, razonamientos o demostraciones susceptibles de impugnación. *Corp. Del FSE v. Unión de Médicos*, 170 DPR 443, 450 (2007) citando a *Sucn. Ramírez v. Tribl. Superior*, 81 DPR 357 (1959).

**-D-**

La doctrina de la "Ley del Caso" es una manifestación necesaria y conveniente del principio reconocido de que las adjudicaciones deben tener fin. *Srio. del Trabajo v. Tribunal Superior*, 95 DPR 136, 141 (1967). Es doctrina reiterada en nuestro sistema que los derechos y obligaciones adjudicadas en el ámbito judicial, mediante dictamen final y firme, constituyen la ley del caso. *Mgmt. Adm. Serv. Corp. v. E.L.A.*, 152 DPR 599, 606 (2000). Dicho de otra manera, de ordinario los planteamientos que han sido objeto de adjudicación por el foro de instancia o por el foro apelativo no pueden reexaminarse.

A fines de velar por el trámite ordenado y pronto de los litigios, así como por la estabilidad y certeza del derecho, un tribunal de instancia, como una cuestión de sana práctica y no como regla inviolable, debe resistirse a alterar sus pronunciamientos dentro de un mismo caso excepto cuando se convenza de que los mismos son erróneos. *Mgnt. Adm. Servs. Corp. v. E.L.A., supra*, pág. 608, citando a *Torres Cruz v. Municipio de San Juan*, 103 DPR 217, 22 (1975). Dichas determinaciones, como regla general, "obligan tanto al tribunal de instancia como al que las dictó si el caso vuelve a su consideración". *Srio. del Trabajo v. Tribunal Superior, supra*, pág. 140.

No obstante, el derecho común preceptúa que un segundo juez no está irremisiblemente obligado a mantener incólume la decisión de un

primer juez de igual nivel dentro del mismo caso. *Torres Cruz v. Municipio de San Juan, supra*, pág. 222. El Tribunal Supremo ha reconocido que "si el Tribunal entiende que la ley del caso antes establecida es errónea y que puede causar una grave injusticia, el Tribunal puede aplicar una norma de derecho diferente a fin de resolver en forma justa". *Don Quixote Hotel v. Tribunal Superior*, 100 DPR 19, 29-30 (1971). Por otro lado, nuestro más alto foro ha reiterado que la doctrina de la ley del caso es una "al servicio de la justicia, no la injusticia; no es férrea ni de aplicación absoluta. Por el contrario, es descartable si conduce a resultados manifiestamente injustos". *Noriega v. Gobernador*, 130 DPR 919, 931 (1992), citando a *Estado v. Ocean Park Dev. Corp.*, 79 DPR 158, 174 (1956) y otros.

### III.

El peticionario sostiene que el foro de instancia erró al no autorizar el retiro de los fondos consignados, **$215,050.00**, a pesar de que la *Sentencia* estableció que el pago adeudado era **$219,838.89**. Arguye que lo dictado por el *foro a quo* advino final y firme, por lo que constituye la ley del caso. De manera tal que el TPI no tenía discreción para denegar el retiro de los fondos consignados. Le asiste la razón. Veamos.

En primer lugar, surge del expediente ante nos que el señor Rivera Andrini obtuvo un préstamo hipotecario revertido. Para garantizar la deuda, suscribió un Pagaré a favor de Money House con una tasa de interés ajustable. Atinente a la controversia ante nos, en dicho acuerdo se estipuló lo siguiente, y citamos: "**[l]a tasa de interés podrá cambiar** el primer día de abril de 2017 y el primer día de cada año posterior". (Énfasis suplido).[7] Por consiguiente, ante los términos acordados, era de esperar que, entre la fecha de la *Sentencia* y la venta judicial, la tasa de interés anual pudiera verse afectada.

En segundo lugar, según hemos reseñado, los derechos y las obligaciones que han sido objeto de adjudicación en el ámbito judicial

---

[7] *Véase*, Apéndice del recurso, SUMAC, Entrada núm. 1, Anejo 1, págs. 3-4.

mediante un dictamen final y firme constituyen la ley del caso. *Mgmt. Adm. Serv. Corp. v. E.L.A., supra,* pág. 606. Mediante la *Sentencia* en rebeldía emitida el 6 de marzo de 2024, el foro de instancia expresamente estableció que Money House era acreedor de **$219,838.89**.

Posteriormente, durante la venta judicial se adjudicó la propiedad por la cantidad de **$215,050.00**, un balance menor al adeudado, según determinado por el TPI. Como resultado, el peticionario solicitó el retiro de la totalidad de los fondos consignados. Sin embargo, el foro de instancia, reiteradamente, denegó la petición de Money House.

El foro de instancia no tomó en consideración las partidas dispuestas en la propia Sentencia y en los términos acordados por el deudor original. Por todo lo cual, concluimos que el TPI abusó de su discreción al denegar el retiro de los fondos consignados. En virtud de lo anterior, es preciso señalar que procede autorizar el retiro del dinero producto de la venta judicial, más los intereses que este hubiera devengado.

**IV.**

Por los fundamentos que anteceden, se expide el auto de *certiorari* y se *Revoca* el dictamen recurrido.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones