ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| COOPERATIVA DE AHORRO Y CRÉDITO NUESTRA SEÑORA DE LA CANDELARIA (CANDEL COOP), <br><br> Apelante, <br><br> v. <br><br> HÉCTOR J. TORRES DELGADO, <br><br> Apelada. | TA2025AP00542 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Caguas. <br><br> Civil núm.: CG2025CV00911. <br><br> Sobre: cobro de dinero - ordinario. |
| --- | --- | --- |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 19 de diciembre de 2025.

Comparece la parte apelante, Cooperativa de Ahorro y Crédito Nuestra Señora de la Candelaria (Candel Coop.), y nos solicita que revisemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas, el 15 de octubre de 2025, notificada al día siguiente. Mediante el referido dictamen, el foro primario declaró con lugar la demanda instada por la parte apelante, y le concedió una suma por concepto de costas y de honorarios de abogado distinta a la pactada en el pagaré en el cual se basa la acción judicial.

Por los fundamentos que exponemos a continuación, modificamos la sentencia apelada y, así modificada, la confirmamos.

I

El 21 de marzo de 2025, Candel Coop. presentó una demanda sobre cobro de dinero contra el señor Héctor J. Torres Delgado (señor Torres o apelado)[1]. Le imputó al señor Torres el incumplimiento de su obligación pecuniaria, conforme a un pagaré suscrito por el apelado a favor de la cooperativa apelante; copia del cual fue sometido junto a la demanda. En

---

[1] *Véase*, apéndice del recurso, entrada núm. 1, SUMAC TA.

virtud de este documento, solicitó el pago de la suma principal adeudada, más una cantidad equivalente al treinta y tres por ciento (33%) de dicha suma para cubrir los gastos, costas y honorarios de abogado incurridos en la presentación del caso de marras.

El 29 de septiembre de 2025, el foro primario anotó la rebeldía al señor Torres, luego de que este fuese emplazado mediante edicto, y que transcurriera el término reglamentario para que formulara su correspondiente alegación responsiva[2].

Consecuentemente, el 15 de octubre de 2025, notificada el 16 de octubre de 2025, el Tribunal de Primera Instancia emitió la *Sentencia* objeto de este recurso[3]. En ella, el foro primario condenó al señor Torres a pagar a Candel Coop. la suma de $1,741.36, más intereses. En lo pertinente, concedió a la apelante la suma de $60.00 en concepto de costas, y otra de $174.00, en concepto de honorarios de abogado.

En desacuerdo, el 21 de octubre de 2025, Candel Coop. presentó oportunamente una moción de reconsideración para impugnar las cuantías accesorias, según concedidas[4]. Esta solicitud fue declarada sin lugar mediante una *Orden* notificada al día siguiente[5]. Posteriormente, el 31 de octubre de 2025, la apelante presentó una segunda moción de reconsideración[6], que no fue aceptada por el foro apelado[7].

Inconforme con el proceder del foro primario, el 13 de noviembre de 2025, la apelante instó este recurso de apelación, y señaló la comisión del siguiente error:

> Erró el TPI al imponer una cuantía de costas, gastos y honorarios de abogados que ya esta[ba] previamente pactada entre las partes por el documento de Pagaré.

---

[2] Véase, apéndice del recurso, entrada núm. 7, SUMAC TA.

[3] *Íd.*, entrada núm. 10.

[4] *Íd.*, entrada núm. 12.

[5] *Íd.*, entrada núm. 13.

[6] *Íd.*, entrada núm. 14.

[7] *Íd.*, entrada núm. 15.

El 14 de noviembre de 2025, emitimos una *Resolución* mediante la cual apercibimos a la parte apelada que, conforme a la Regla 22 del Reglamento de este Tribunal, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR \_\_\_\_ (2025), el término para presentar su oposición vencería el lunes, 15 de diciembre de 2025. Transcurrido dicho término, la parte apelada no presentó escrito alguno, por lo que atendemos el presente recurso sin el beneficio de su comparecencia.

II

A

En nuestro sistema de derecho civil, las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos en que intervenga cualquier género de culpa o negligencia. Art. 1063 del Código Civil, 31 LPRA sec. 8984. En cuanto a los contratos, "[l]a teoría contractual que rige en nuestra jurisdicción dispone el principio de contratación o autonomía de la voluntad". *Coop. Sabaneña v. Casiano Rivera*, 184 DPR 169, 173 (2011).

El principio de *pacta sunt servanda* estatuido en el Código Civil dispone que "[l]as partes pueden acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público". Art. 1232, 31 LPRA sec. 9753. Así pues, "[l]o acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley", de manera que las obligaciones que nacen de estos deben cumplirse a tenor con los mismos. Art. 1233, 31 LPRA sec. 9754. Véase, *Coop. Sabaneña v. Casiano Rivera*, 184 DPR, a las págs. 173-174.

Asimismo, el Art. 1237 del Código Civil, 31 LPRA sec. 9771, establece que los contratos se perfeccionan desde el mero consentimiento entre las partes. De esta manera, los contratos obligan tanto al cumplimiento de lo expresamente pactado, como a las consecuencias que sean conformes a la buena fe, al uso y la ley, según la naturaleza de lo pactado. Arts. 1062 y 1236, sec. 8983 y 8757. A su vez, el Tribunal Supremo ha expuesto que la buena fe vincula a las partes durante las relaciones

precontractuales, regulan la ejecución de los contratos y afectan su interpretación. *S.L.G. Ortiz Alvarado v. Great American,* 182 DPR 48, 68-69 (2011).

En lo pertinente, nuestro Código Civil dispone que, si los términos de un contrato son claros y no cabe duda sobre la intención de los contratantes, debemos atenernos al sentido literal de sus cláusulas. Art. 354, 31 LPRA sec. 6342. Ahora bien, solo cuando las palabras fuesen contrarias a la evidente intención de las partes, esta última prevalecerá sobre los expresado. *Íd*. Al respecto, el Tribunal Supremo expuso que:

.        .        .        .        .        .        .        .

> [l]a intención de las partes es el criterio fundamental dispuesto en el Código Civil para fijar el alcance de las obligaciones contractuales. Es tan fundamental este criterio de intención que el Código proclama su supremacía al disponer que la intención evidente de las partes prevalecerá sobre las palabras, aun cuando éstas parecieran contrarias a aquélla.

*Asoc. Res. Los Versalles v. Los Versailles*, 194 DPR 258, 267 (2015), citando a *Merle v. West Bend Co.*, 97 DPR 403, 409-410 (1969).

Por tanto, resulta innecesario recurrir a las reglas de interpretación cuando los términos del contrato son evidentemente claros y libre de toda ambigüedad. *Trinidad v. Chade*, 153 DPR 280, 289 (2001). Bajo este supuesto, el contenido del contrato queda configurado como la ley entre las partes. *Barreto Nieves et al. v. East Coast*, 213 DPR 852, 864 (2024).

B

En nuestro ordenamiento civil, el acreedor contractual cuenta con ciertas garantías para proteger y asegurar su derecho de crédito, entre estas, la cláusula penal. *Coop. Sabaneña v. Casiano Rivera*, 184 DPR, a las pág. 174. Dicha cláusula ha sido definida como "una convención accesoria a una obligación principal mediante la cual se promete realizar una prestación, generalmente pecuniaria, para el caso en que una de las partes no cumpla o cumpla mal o irregularmente lo prometido". *Xerox Corporation v. Gómez Rodríguez y otros*, 201 DPR 945, 960 (2019), citando a *Coop. Sabaneña v. Casiano Rivera*, 184 DPR, a la pág. 175.

El Código Civil vigente expresamente permite el pacto de este tipo de cláusulas con el fin de evitar que una obligación principal se cumpla parcial o tardíamente. Art. 1527, 31 LPRA sec. 9832. Ante esto, la consecuencia pactada por virtud de una cláusula penal puede consistir en el pago de una suma cierta, la pérdida del beneficio del plazo, así como cualquier otra pena que bien tengan en convenir las partes de un contrato. *Íd.*

Por otro lado, el Tribunal Supremo ha establecido que la función principal de la cláusula penal es: (1) coercer o sancionar el incumplimiento, y (2) evaluar por anticipado los perjuicios que habría de ocasionar al acreedor el incumplimiento de la obligación. *Xerox Corporation v. Gómez Rodríguez y otros*, 201 DPR, a la pág. 960; *Coop. Sabaneña v. Casiano Rivera*, 184 DPR, a la pág. 179. En fin, "el convenio de una cláusula penal redunda en la ausencia de tener que probar los daños que sufrió el acreedor por el incumplimiento de la obligación", pues la pena sustituirá la indemnización de daños. *Íd.*, a la pág. 175.

Ahora bien, aunque los tribunales tengan facultad para moderar o sustituir las penas convenidas en este tipo de cláusulas, ello solo procede cuando exista una extrema desproporción económica entre la pena y la prestación principal. Esto, pues los tribunales no pueden obviar la obligatoriedad de los convenios pactados. Art. 1527, 31 LPRA sec. 9832. Por lo tanto, la norma prevaleciente es que la facultad moderadora de los tribunales solo se encuentra disponible para circunstancias extraordinarias y justificadas, evitando así una interferencia lesiva con la autonomía contractual de las partes. *Coop. Sabaneña v. Casiano Rivera*, 184 DPR, a la pág. 182.

### III

La parte apelante nos solicita la corrección de la sentencia apelada a los únicos efectos de corregir la cuantía concedida por el foro apelado en concepto de costas, gastos y honorarios de abogado, para conformarla a lo pactado en el pagaré objeto de su causa de acción. Su argumento

principal se resume en que el Tribunal de Primera Instancia erró al reducir la cuantía concedida por tal concepto, en contravención de los términos y condiciones pactados entre ambas partes en el documento aludido.

Evaluado su señalamiento de error y el derecho aplicable a la controversia, concluimos que le asiste la razón. Veamos

Cual citado, es norma reiterada y establecida que las partes contratantes pueden pactar las cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarias a las leyes, la moral o el orden público. Una vez se perfeccionan, las obligaciones que nacen de estos contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de estos. Además, cuando los términos de dichos contratos son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de las cláusulas.

Por otro lado, mediante la incorporación de una cláusula penal, las partes contratantes pueden pactar el pago de una suma cierta, con el fin de evitar o sancionar el incumplimiento de una obligación y, a su vez, para sustituir la indemnización de los perjuicios que sufre un acreedor por tal incumplimiento. Los tribunales pueden moderar o sustituir los términos de dicha cláusula, pero solo en circunstancias en que la pena convenida produzca una extrema desproporción económica. De lo contrario, las partes contratantes quedan obligadas al cumplimiento de la cláusula penal contenida en el contrato.

En este caso, Candel Coop. presentó un pagaré suscrito por el señor Torres, en el cual convinieron una cláusula para el pago de una suma cierta en concepto de costas, gastos y honorarios de abogado para el caso en que el deudor apelado incumpliera con el pago del préstamo que le fue otorgado por la cooperativa apelante. Esta cláusula, a todas luces, se encuentra revestida de la naturaleza punitiva que caracteriza a las cláusulas penales.

Dicha cláusula dispone, con un lenguaje claro y libre de ambigüedades, que el señor Torres debe pagar una suma equivalente al

treinta y tres por ciento (33%) de la cantidad que adeudaba al momento de instar la acción judicial que motiva este recurso, con el fin de resarcir a la cooperativa apelante por concepto de aquellos gastos, costas y honorarios de abogado en que tuvo que incurrir al reclamar el pago de la obligación incumplida. Hemos constatado que, en efecto, dicha suma es equivalente a los $520.90 reclamados por Candel Coop.

No hallamos criterio alguno para concluir que dicha cantidad sea económicamente desproporcionada, por lo que no se justificaba la intervención del foro primario para reducir la misma, máxime cuando fue convenida contractualmente entre las partes. En consecuencia, opinamos que el Tribunal de Primera Instancia erró al conceder una suma diferente a la pactada en el referido pagaré.

En virtud del pagaré suscrito por el señor Torres a favor de Candel Coop., esta es acreedora de la suma de $520.90, en concepto de costas, gastos y honorarios de abogado, equivalente a un treinta y tres por ciento (33%) de la suma adeudada al momento de iniciar el pleito en el caso de marras.

IV

Por virtud de los fundamentos antes expuestos, modificamos las cuantías otorgadas en concepto de costas y de honorarios de abogado para conformarlas al porciento consignado en el pagaré suscrito entre las partes. Así modificada, confirmamos la *Sentencia* dictada por el Tribunal de Primera Instancia, Sala Superior de Caguas.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones