Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| PLANELL AMBULANCE SERVICE, INC.<br><br>Apelante<br><br>v.<br><br>LETICIA CRUZ RAMÍREZ<br><br>Apelada | KLAN202500437 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Lares<br><br>Sobre: Cobro de Dinero<br><br>Caso Núm. LR2022CV00138 |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez.

Rodríguez Casillas, juez ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 9 de octubre de 2025.

Comparece ante nos Planell Ambulance Service, Inc. (en adelante, Planell o apelante) y nos solicita que revoquemos la *Sentencia* emitida y notificada el 27 de marzo de 2025 por el Tribunal de Primera Instancia, Sala Superior de Lares (en adelante, TPI). Mediante el referido dictamen, se declaró *No Ha Lugar* la demanda en cobro de dinero por encontrar que la deuda reclamada no era líquida ni exigible. Además, se determinó que existía controversia sobre la cuantía reclamada.

Evaluado el recurso, procedemos a revocar la *Sentencia* apelada por los fundamentos que expondremos a continuación.

-I-

El **27 de mayo de 2022**, Planell presentó una demanda sobre cobro de dinero contra la señora Leticia Cruz Ramírez (en adelante, señora Cruz Ramírez o apelada).[1] En esencia, alegó que la señora

---

[1] Apéndice I de la *Apelación*, pág. 1. Inicialmente, la *Demanda* se presentó al amparo de la Regla 60 de Procedimiento Civil, 32 LPRA Ap. V, R. 60.

Cruz Ramírez le adeudaba la suma de **$6,090.48** por los servicios prestados y no pagados para la transportación en ambulancia del señor Juan Luis Cruz Serrano (en adelante, señor Cruz Serrano o paciente), padre de la apelada. Arguyó que la apelada era responsable por la cantidad adeudada, en virtud de la firma que prestó como compromiso de pago. Estos servicios se prestaron desde el 30 de marzo de 2021 hasta el 17 de abril de 2021. Los mismos consistían en transportar al señor Cruz Serrano desde su hogar en el Barrio Castañer de Lares hasta el Centro Renal de Lares y viceversa.

Tras varios trámites procesales,[2] la señora Cruz Ramírez compareció mediante *Contestación a demanda* el **30 de marzo de 2023**.[3] En apretada síntesis, negó las alegaciones en su contra. Particularmente, alegó que nunca se comprometió a pagar por los servicios antes mencionados como deudora principal. Aseveró que la deuda reclamada debió ser facturada adecuada y correctamente al plan médico del señor Cruz Serrano. De igual forma, argumentó que Planell tenía la obligación de facturarle al plan médico de manera correcta y a tiempo. Finalmente, levantó como defensa afirmativa que la apelante es la única responsable de no haber cobrado por sus servicios por no llevar a cabo las gestiones pertinentes de facturación al plan médico y que fue negligente en su proceder.

Luego de varios trámites innecesarios pormenorizar, el **25 de junio de 2024** el TPI celebró el juicio en su fondo con la comparecencia de ambas partes y sus respectivos abogados. La

---

[2] Entre ellos se encuentran, la *Minuta* del 16 de marzo de 2023 que consta la conversión del procedimiento sumario bajo la Regla 60 de Procedimiento Civil, *supra*, a uno de carácter ordinario. Así, el 23 de marzo de 2023 el TPI emitió una *Resolución* en la cual levantó la anotación en rebeldía, por lo que en ese mismo día, emitió la *Orden del Manejo de Caso y Conferencia Inicial*. Véase, Entrada Núm. 26, 28, 32 de SUMAC. Además, pautó la Conferencia Inicial para el 21 de junio de 2023. Véase, Entrada Núm. 27 de SUMAC.
[3] Apéndice IV de la *Apelación*, págs. 18-19.

parte apelante presentó el testimonio del señor Gustavo Javier Panell Pabón y la señora Kiara Vega González. De la otra parte, solo testificó la apelada, la señora Leticia Cruz Ramírez.

El **27 de marzo de 2025**,[4] el TPI emitió una *Sentencia* con la siguiente prueba documental:

(a) Prueba estipulada:

- Exhibit I- Hoja de Incidente de Planell Ambulance con fecha de 30 de marzo 2021.
- Exhibit II- Hoja de Incidente de Planell Ambulance con fecha de 3 de abril de 2021 (A).
- Exhibit III- Hoja de Incidente de Planell Ambulance con fecha de 3 de abril de 2021 (B).
- Exhibit IV- Hoja de Incidente de Planell Ambulance con fecha de 8 de abril de 2021 (A).
- Exhibit V- Hoja de Incidente de Planell Ambulance con de fecha de 8 de abril de 2021 (B).
- Exhibit VI- Hoja de Incidente de Planell Ambulance con fecha de 10 de abril de 2021 (A).
- Exhibit VII- Hoja de Incidente de Planell Ambulance con fecha de 10 de abril de 2021 (B).
- Exhibit VIII- Hoja de Incidente de Planell Ambulance con fecha de 13 de abril de 2021 (A).
- Exhibit IX- Hoja de Incidente de Planell Ambulance con fecha de 13 de abril de 2021 (B).
- Exhibit X- Hoja de Incidente de Planell Ambulance con fecha de 15 de abril de 2021 (A).
- Exhibit XI- Hoja de Incidente de Planell Ambulance con fecha de 15 de abril de 2021 (B).
- Exhibit XII- Hoja de Incidente de Planell Ambulance con fecha de 17 de abril de 2021 (A).
- Exhibit XIII- Hoja de Incidente de Planell Ambulance con fecha de17 de abril de 2021 (B).
- Exhibit XIV- Comunicación del 18 de marzo de 2021 Firmada por Leticia Cruz Ramírez.
- Exhibit XV- Carta de Cobro de Planell Ambulance Services Inc., firmada el 14 de febrero de 2022.

(b) Exhibits de la Parte Demandante/Apelante:

- Exhibit I-Hoja de Incidente de Planell Ambulance con fecha de 1 de abril de 2021 (A).[5]
- Exhibit II- Hoja de Incidente de Planell Ambulance con fecha de 1 de abril de 2021 (B).[6]

---

[4] Apéndice VI de la *Apelación*, págs. 33-43. Entrada Núm. 27 de SUMAC.

[5] Este documento fue admitido a los únicos efectos de establecer que le fue entregado a la testigo Kiara Vega González, y no con el propósito de establecer la veracidad del contenido del mismo.

[6] Este documento fue admitido a los únicos efectos de establecer que le fue entregado a la testigo Kiara Vega González, y no con el propósito de establecer la veracidad del contenido del mismo.

- Exhibit III- Hoja de Incidente de Planell Ambulance con fecha de 6 de abril de 2021 (A).[7]
- Exhibit IV- Hoja de Incidente de Planell Ambulance con fecha de 6 de abril de 2021 (B).[8]
- Impresión de conversación vía *Whats App* entre Gustavo Javier Planell Pabón y la Parte Demandada con fechas de 7, 12 y 13 de abril de 2021.

Evaluada la prueba testifical y documental, el TPI emitió las siguientes *determinaciones de hechos*:

1. *Leticia Cruz Ramírez es la hija del Sr. Juan Luis Cruz Serrano. A la fecha de los hechos este último, al igual que la Parte Demandada, residían en el Barrio Castañer de Lares.*

2. *El Sr. Juan Luis Cruz Serrano padece de cáncer y es paciente renal.*

3. *En marzo del año 2021 el Sr. Juan Luis Cruz Serrano se encontraba hospitalizado en el Hospital San Lucas en el municipio de Ponce. Fue dado de alta el 30 de marzo de 2021. Un funcionario o funcionaria del Hospital San Lucas se comunicó con Gustavo Javier Planell Pabón, quién es presidente y administrador de Planell, para informarle sobre la necesidad de servicios de transportación para el Sr. Juan Luis Cruz Serrano, esto para transportarlo desde el Hospital San Lucas en Ponce al Barrio Castañer en Lares. Gustavo Javier Planell Pabón procede entonces a comunicarse con la Parte Demandada para ofrecerle dicho servicio, y la Parte Demandada aceptó el ofrecimiento.*

4. *El 1 de abril de 2021 el Sr. Juan Luis Cruz Serrano comenzó un régimen de diálisis, ello en las mismas facilidades del Centro Renal de Lares. Para recibir los tratamientos de diálisis, era necesario que el Sr. Juan Luis Cruz Serrano se transportara desde su residencia en el Barrio Castañer de Lares hasta el Centro Renal en el municipio de Lares, y de regreso a su hogar. La Parte Demandada aceptó que los servicios de transportación fuesen brindados por la Parte Demandante.*

5. ***Planell le brindó varios servicios de transportación al Sr. Juan Luis Cruz Serrano para llegar desde su residencia en el Barrio Castañer de Lares al Centro Renal en Lares, y de vuelta a su residencia. Los servicios de transportación fueron provistos en las siguientes fechas y rutas:***
   a. ***30 de marzo de 2021- del Barrio Castañer de Lares al Centro Renal en Lares.***
   b. ***1 de abril de 2021- del Barrio Castañer de Lares al Centro Renal en Lares.***
   c. ***1 de abril de 2021- del Centro Renal en Lares al Barrio Castañer de Lares.***

---

[7] Este documento fue admitido a los únicos efectos de establecer que le fue entregado a la testigo Kiara Vega González, y no con el propósito de establecer la veracidad del contenido del mismo.
[8] Este documento fue admitido a los únicos efectos de establecer que le fue entregado a la testigo Kiara Vega González, y no con el propósito de establecer la veracidad del contenido del mismo.

d. **3 de abril de 2021- del Barrio Castañer de Lares al Centro de Diálisis en Lares.**

e. **3 de abril de 2021- del Centro de Diálisis en Lares al Barrio Castañer de Lares.[9]**

f. **6 de abril de 2021- del Barrio Castañer de Lares al Centro Renal en Lares.**

g. **6 de abril de 2021- del Centro Renal en Lares al Barrio Castañer de Lares.**

h. **8 de abril de 2021- del Barrio Castañer de Lares al Centro Renal en Lares.**

i. **8 de abril de 2021- del Centro Renal en Lares al Barrio Castañer de Lares.**

j. **10 de abril de 2021- del Barrio Castañer de Lares al Centro Renal en Lares.**

k. **10 de abril de 2021- del Centro Renal en Lares al Barrio Castañer de Lares.**

l. **13 de abril de 2021- del Barrio Castañer de Lares al Centro Renal en Lares.**

m. **13 de abril de 2021- del Centro Renal en Lares al Barrio Castañer de Lares.**

n. **15 de abril de 2021- del Barrio Castañer de Lares al Centro Renal en Lares.**

o. **15 de abril de 2021- del Centro Renal en Lares al Barrio Castañer de Lares.**

p. **17 de abril de 2021- del Barrio Castañer de Lares al Centro Renal en Lares.**

q. **17 de abril de 2021- del Centro Renal en Lares al Barrio Castañer de Lares.** *[Énfasis nuestro].*

6. Por cada uno de los servicios de transportación que fueron brindados, Planell generaba un documento intitulado "Hoja de Incidente". **En el anverso de dicho documento, aparece una línea para tomar una firma que indica "Paciente-acepta evaluación y transportación (vea Anexo 3)".** *El Anexo 3, que se encuentra al reverso de la "Hoja de Incidente", lee como sigue:* **"Yo (o mi encargado en el momento) firmante en el Anexo #3 área frontal de este documento legal, acepto el cuidado pre-hospitalario y transportación en ambulancia. Y me comprometo a pagar a PLANELL AMBULANCE SERVICES, INC. por los servicios rendido (sic) de acuerdo a las tarifas prevalecientes y autorizo a que me facture a mi plan médico que poseo por los servicios rendidos de acuerdo a las tarifas vigentes"**. *[Énfasis nuestro].*

7. **La tarifa establecida por Medicare por cada servicio de transportación individual es de $338.00. Sin embargo, Planell no estableció cuánto era su tarifa en caso de que el servicio no sea cubierto por el plan médico. Entiéndase por ello que el servicio de transportación del Barrio Castañer de Lares al Centro Renal en Lares tiene una tarifa de $338.00 y el servicio de transportación del Centro Renal en Lares al Barrio Castañer de Lares tiene una tarifa separada e independiente de $338.00.** *[Énfasis nuestro].*

---

[9] Cabe señalar como error involuntario que el TPI excluyó la ruta de regreso del **30 de marzo de 2021- del Centro Renal en Lares al Barrio Castañer de Lares.**

8. *Para las fechas en que Planell le brindó los servicios de transportación al Sr. Juan Luis Cruz Serrano este se encontraba encamado debido a sus condiciones médicas, y no podía firmar las hojas de incidentes a las que se ha hecho referencia previamente. Por ello se hizo necesario que la firma en dichas hojas de incidente fuera provista por* **la Parte Demandada. En todas las ocasiones en que la Parte Demandada firmó las hojas de incidente lo hizo estando en la residencia del Sr. Juan Luis Cruz Serrano***. [Énfasis nuestro].*

9. **Las hojas de incidente a las que se ha hecho referencia no incluyen información sobre el costo de los servicios de transportación brindados o a brindarse.** *La Parte Demandada no inquirió ante los que requerían su firma sobre el costo prevaleciente de los servicios de transportación. Esto es,* **la Parte Demandada firmó las hojas de incidente sin tener conocimiento de cuáles eran las tarifas prevalecientes a las que hacía referencia el Anexo 3 previamente citado**. *[Énfasis nuestro].*

10. *La Parte Demandada puso su firma en la línea para tomar la misma en el anverso de las siguientes hojas de incidente:*
    **a.** *30 de marzo de 2021 (Servicio de transportación del Barrio Castañer de Lares al Centro Renal en Lares).[10]*
    **b.** *3 de abril de 2021- (Servicio de transportación del Barrio Castañer de Lares al Centro de Diálisis en Lares).*
    **c.** *3 de abril de 2021- (Servicio de transportación del Centro de Diálisis en Lares al Barrio Castañer de Lares).*
    **d.** *8 de abril de 2021- (Servicio de transportación del Barrio Castañer de Lares al Centro Renal en Lares).*
    **e.** *8 de abril de 2021- (Servicio de transportación del Centro Renal en Lares al Barrio Castañer de Lares).*
    **f.** *10 de abril de 2021- (Servicio de transportación del Barrio Castañer de Lares al Centro Renal en Lares).*
    **g.** *10 de abril de 2021- (Servicio de transportación del Centro Renal en Lares al Barrio Castañer de Lares).*
    **h.** *13 de abril de 2021- (Servicio de transportación del Barrio Castañer de Lares al Centro Renal en Lares).*
    **i.** *13 de abril de 2021- (Servicio de transportación del Centro Renal en Lares al Barrio Castañer de Lares).*
    **j.** *15 de abril de 2021- (Servicio de transportación del Barrio Castañer de Lares al Centro Renal en Lares).*
    **k.** *15 de abril de 2021- (Servicio de transportación del Centro Renal en Lares al Barrio Castañer de Lares).*
    **l.** *17 de abril de 2021- (Servicio de transportación del Barrio Castañer de Lares al Centro Renal en Lares).*
    **m.** *17 de abril de 2021- (Servicio de transportación del Centro Renal en Lares al Barrio Castañer de Lares).*

11. **El Sr. Juan Luis Cruz Serrano tuvo una cubierta con el plan médico MCS hasta el 30 de marzo de 2021. Al mismo tiempo, era beneficiario del programa de Medicare. Luego del 30 de marzo de 2021, el Sr. Juan Luis Cruz Serrano cambió su plan médico de MCS a CIGNA.** *La razón para ello*

---

[10] Cabe señalar como error involuntario que el TPI excluyó la ruta de regreso del **30 de marzo de 2021- del Centro Renal en Lares al Barrio Castañer de Lares.**

*era que estaría recibiendo tratamiento médico en el estado de Florida, EEUU. El Sr. Juan Luis Cruz Serrano salió de Puerto Rico el 22 de abril de 2021. [Énfasis nuestro].*

12. ***Los servicios de facturación a planes médicos le son provistas a la Parte Demandante por la entidad llamada Max Billings.*** *Las hojas de incidentes son recogidas, todos los miércoles, por Max Billings.* ***Una vez se reciben las hojas de incidente, Max Billings verifica la elegibilidad del paciente y, constatada dicha elegibilidad, presenta las facturas al plan médico correspondiente.*** *Cada hoja de incidente genera un procedimiento de facturación. Estos, si se tratase de seis hojas de incidente, se realizarían seis facturaciones independientes. [Énfasis nuestro].*

13. ***Max Billings recibió la hoja de incidente correspondiente al servicio de transportación brindado el <u>30 de marzo de 2021</u>. El servicio de transportación brindado el 30 de marzo de 2021 no fue pagado debido a que la Parte Demandada no proveyó una certificación médica expedida por el médico primario que era requerida para procesar el pago.*** *[Énfasis nuestro].*

14. *Max Billings recibió las hojas de incidente correspondientes a los servicios de transportación brindados el 3 de abril de 2021.* ***Al verificarse la elegibilidad del Sr. Juan Luis Cruz Serrano con MCS encuentran que el paciente se encuentra inactivo. Sin embargo, el programa utilizado para verificar la elegibilidad, denominado Inmediata, no reflejaba la existencia de un plan médico al que estuviese adscrito el paciente.*** *Se le informó a la Parte Demandante sobre la inelegibilidad del paciente con el plan médico MCS.* ***Una vez la Parte Demandante le comunica a Kiara Vega González los pormenores necesarios del plan médico CIGNA, esta se comunica con funcionarios de este último.*** *[Énfasis nuestro].[11]*

15. <u>*Gustavo Planell, al ser alertado por Max Billings sobre el hecho de que el paciente no tenía cubierta bajo MCS, se comunica con la Parte Demandada para informarle sobre ello.*</u> ***<u>Dicha comunicación se realizó en o antes del 7 de abril de 2021. La Parte Demandada, el 13 de abril de 2021, le proveyó a Planell una fotografía de la tarjeta del plan médico de CIGNA, ello mediante la aplicación Whatsapp. La Parte Demandante le expresó a la Parte Demandada que se</u>***

---

[11] La testigo Kiara Vega González testificó que se comunicó con CIGNA. Sin embargo, el Tribunal no admitió en evidencia lo que presuntamente le fue comunicado por un funcionario o funcionaria de CIGNA al determinar que era prueba de referencia inadmisible. La Parte Demandante brindó, como prueba ofrecida y no admitida, que el funcionario o funcionaria de CIGNA le indicó a Kiara Vega González que no ofrecían cubierta por servicios de transportación en Puerto Rico. Las partes, en el juicio, acordaron que el mismo tratamiento le fuese brindado a cada uno de los servicios de transportación brindados por la Parte Demandante. Esto es, que la Parte Demandante brindaba como prueba ofrecida y no admitida que Kiara Vega González, una vez recibió las hojas de incidentes correspondientes a los servicios de transportación brindados por Planell el 3 de abril de 2021, 8 de abril de 2021, 13 de abril de 2021, 15 de abril de 2021 y 17 de abril de 2021, se comunicó con un funcionario o funcionaria de CIGNA, quién le indicó a Kiara Vega González que no ofrecían cubierta por servicios de transportación en Puerto Rico.

*procedería a realizar la facturación correspondiente ante dicho plan. [Énfasis nuestro].*

16. *Max Billings recibió las siguientes hojas de incidente:* **(a)** *Hoja de Incidente de Planell Ambulance con fecha de 1 de abril de 2021 (Servicio de transportación del Barrio Castañer de Lares al Centro Renal en Lares),* **(b)** *Hoja de Incidente de Planell Ambulance con fecha de 1 de abril de 2021 (Servicio de transportación del Centro Renal en Lares al Barrio Castañer de Lares),* **(c)** *Hoja de Incidente de Planell Ambulance con fecha de 6 de abril de 2021 (Servicio de transportación del Barrio Castañer de Lares al Centro de Diálisis en Lares y* **(d)** *Hoja de Incidente de Planell Ambulance con fecha de 6 de abril de 2021 (Servicio de transportación del Centro de Diálisis en Lares al Barrio Castañer de Lares).[12]* **<u>Kiara Vega González procedió a verificar la elegibilidad del Sr. Juan Luis Cruz Serrano bajo el plan MCS, encontrando que no la tenía</u>**. *[Énfasis nuestro].*

17. ***Las hojas de incidente correspondientes los servicios de transportación brindados el <u>1 y 6 de abril de 2021</u> no fueron firmados por la Parte Demandada.[13]*** *Los servicios de transportación del 1 y 6 de abril no le fueron pagados a Planell. [Énfasis nuestro].*

18. *La Parte Demandante no recibió pago alguno por los servicios de transportación que le fueron brindados al Sr. Juan Luis Cruz Serrano.*

19. <u>*La Parte Demandante no le informó a la Parte Demandada que CIGNA presuntamente no ofrecía cubierta para los servicios de transportación*</u> ***sino hasta después de haber provisto los mismos.[14] Esto es, la Parte Demandante, estando presuntamente enterada de que CIGNA no ofrecía cubierta para los servicios de transportación que se le estaban brindando al Sr. Juan Luis Cruz Serrano, <u>continuó brindando los mismos sin comunicarle a la Parte Demandada sobre la falta de cubierta</u>***. *[Énfasis nuestro].*

20. ***La Parte Demandada no tiene conocimiento de las razones por las cuales CIGNA no pagó las facturas correspondientes al servicio de transportación brindado por Planell al Sr. Juan Luis Cruz Serrano.***

---

[12] Este documento fue admitido a los únicos efectos de establecer que le fue entregado a la testigo Kiara Vega González, y no con el propósito de establecer la veracidad del contenido del mismo.

[13] Sobre estas hojas de incidentes el testimonio de Gustavo Planell Pabón fue contradictorio. Preguntado sobre ello por la representación legal de la Parte Demandante, afirmó que la hoja del 1 de abril de 2021 fue firmada por la Parte Demandada. **Sin embargo, en el contrainterrogatorio, afirmó que las hojas de incidente correspondientes al 1 y 6 de abril de 2021 habían sido firmadas por el hermano de la Parte Demandada. Dicha contradicción, sumado al hecho de que Gustavo Planell Pabón no estuvo presente al momento de la firma de las hojas de incidente, le resta credibilidad a su versión de quién imprimió su firma en dichos documentos**. *[Énfasis nuestro].*

[14] Gustavo Planell Pabón testificó que, previo a presentarse la demanda, se le habían enviado tres cartas de cobro a la Parte Demandada. Sin embargo, (i) no recuerda las fechas en que se habían enviado las cartas y (ii) no se recibió testimonio sobre el contenido de dichas cartas.

21. *La Parte Demandada no ha tenido ante sí los documentos de facturación de la Parte Demandante a CIGNA para reclamar el pago de los servicios de transportación ofrecidos al Sr. Juan Luis Cruz Serrano.*

22. ***La Parte Demandada no realizó gestión alguna con el plan médico CIGNA dirigidas a que este pagase las facturas correspondientes al servicio de transportación brindado por Planell al Sr. Juan Luis Cruz Serrano****. [Énfasis nuestro].*

Así, el TPI desestimó la demanda por entender que Planell no realizó las gestiones necesarias para informarle a la señora Cruz Ramírez que CIGNA no cubría los servicios de transporte en ambulancia. Razonó que la apelante no presentó evidencia que demostrara la denegatoria de CIGNA a cubrir los servicios de transportación en ambulancia. Por ello, determinó que no surgía la obligación de la señora Cruz Ramírez de satisfacer los costos no cubiertos por CIGNA.

Además, el TPI señaló que desde el 13 de abril de 2021, Planell conocía del cambio de plan médico del señor Cruz Serrano y que a pesar de conocer que CIGNA no ofrecía cubierta para servicios de transportación, esto no le fue comunicado a la señora Cruz Ramírez de manera oportuna. Ello impidió que la señora Cruz Ramírez pudiese evaluar si continuaba recibiendo los servicios de la apelante o si debía explorar otras alternativas. Razonó que durante el transcurso de un mes, Planell le proveyó los servicios al señor Cruz Serrano sabiendo que no había cubierta para ellos para luego reclamarle a la apelada el pago de dichos servicios.

También, el TPI señaló que, asumiendo la validez de la *Hoja de Incidentes* como un contrato entre las partes, el mismo era un contrato de adhesión cuyas cláusulas se interpretan en sentido desfavorable a la persona que las redacta y en favor de la persona que se vio obligada a aceptarlas. En relación a las *Hojas de Incidentes*, encontró que Planell no estableció el costo por cada viaje de transporte, sino que solo se estableció las partidas costeadas por Medicare. Por todo esto, concluyó que la señora Cruz Ramírez no

estaba obligada a responder por la deuda ya que Planell no acreditó la gestión ante CIGNA. Por lo que la deuda aunque vencida, no era líquida ni exigible ya que no se estableció la obligación de la señora Cruz Ramírez y existía controversia sobre la cuantía reclamada.

El **10 de abril de 2025**, Planell presentó una *Moción de Reconsideración.* En apretada síntesis, adujo que las conclusiones del TPI no se ajustaban a las determinaciones de hechos plasmadas en la Sentencia.[15]

El **14 abril de 2025**, el TPI declaró *No ha lugar* la moción de reconsideración.

En desacuerdo, Planell acudió ante nos en el presente recurso de apelación y planteó la comisión del siguiente error:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA DEMANDA INDICANDO QUE LA PARTE DEMANDANTE, COMO ELEMENTO ESENCIAL DE SU ACCIÓN, VENÍA LLAMADA A PROBAR, NO SOLO QUE HABÍA REALIZADO GESTIONES DE FACTURACIÓN CON EL PLAN MÉDICO CIGNA DE MANERA OPORTUNA Y ADECUADA, SINO QUE CIGNA, ANTE TALES COMETIDOS HABÍA DENEGADO LA CUBIERTA.

La señora Cruz Ramírez no compareció a pesar de habérsele concedido término para ello, por lo cual el recurso quedó perfeccionado para la consideración del Panel Especial.

-II-

-A-

[E]l contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones".[16] Una vez constituido aplica el principio de *pacta sunt servanda* en que las partes se comprometen a cumplir con lo pactado.[17] En ese sentido, "[lo] acordado en los contratos tiene fuerza de ley entre las partes,

---

[15] Entrada Núm. 58 de SUMAC.
[16] 31 LPRA sec. 9751.
[17] *PRFS v. Promoexport,* 187 DPR 42, 52 (2012); *BBPR v. Sunc. Talavera,* 174 DPR 686 (2008).

ante sus sucesores y ante terceros en la forma que dispone la ley".[18] De esta forma, la contravención de una obligación contractual acarrea exigir el pago de una indemnización o el cumplimiento específico de las cláusulas pactadas.[19]

Es harto conocido que nuestra jurisdicción rige el principio de la autonomía de la voluntad en la contratación. Este principio le concede amplia libertad de acción a las partes que desean obligarse.[20] La aludida norma está recogida en el Artículo 1232 del Código Civil, el cual dispone que *"[l]as partes pueden acordar cualquier cláusula que no sea contraria a las leyes, a la moral o al orden público"*.[21] Como se sabe, los contratos se perfeccionan desde que las partes manifiestan su consentimiento sobre el objeto y la causa, obligándose así al cumplimiento de lo expresamente pactado.[22] Así pues, las obligaciones contraídas conforme al ordenamiento jurídico tendrán fuerza de ley entre las partes y deben ser cumplidas según estos.[23]

Sobre la interpretación de los contratos, es norma reiterada que estos no están sujetos a interpretación cuando sus términos son claros y específicos.[24] El Artículo 354 del Código Civil dispone que *"[s]i los términos de un negocio jurídico bilateral son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras"*.[25]

Ahora bien, en caso de que los términos de un negocio jurídico bilateral sean ambiguos, estos deben interpretarse *"en sentido desfavorable a quien la redactó y en favor de la parte que tuvo menor poder de negociación"*.[26]

---

[18] 31 LPRA sec. 9754.
[19] *PRFS v. Promoexport, supra.*
[20] *BPPR v. Sucn. Talavera*, 174 DPR 686, 693 (2008).
[21] 31 LPRA sec. 9753; *Álvarez de Choudens v. Rivera Vázquez*, 165 DPR 1, 17 (2005); *Irizarry López v. García Cámara*, 155 DPR 713, 725 (2001).
[22] 31 LPRA sec. 9771.
[23] 31 LPRA sec. 9754.
[24] *Asoc. Res. Los Versalles v. Los Versalles*, 194 DPR 258, 267 (2015).
[25] 31 LPRA sec. 6342.
[26] 31 LPRA sec. 6346.

**-B-**

La controversia que nos ocupa, exige la discusión de la figura del contrato de servicios, toda vez que la apelante proveyó a la apelada el servicio de transporte médico hacia las citas de diálisis del paciente.

De entrada, el Artículo 1381 del Código Civil del 2020, define el contrato de servicios de la siguiente forma:

> Por el contrato de servicios, el prestador se obliga a proveer, sin estar subordinado al comitente, un servicio mediante el pago de un precio.[27]

Es decir, el contrato de servicios es uno bilateral entre las partes, en el cual, una vez se acuerda el servicio y se fija el precio, surge la obligación del prestador de servicio a proveer el mismo, ello sin estar subordinado al comitente.

Lo antes dicho, está enmarcado en la liberalidad que tiene el prestador de servicios para brindar los mismos. Ello encuentra respaldo en el Artículo 1382 del Código Civil del 2020 que establece:

> Salvo cuando se conviene de otro modo, el prestador de los servicios elige libremente los medios y puede valerse, bajo su dirección y responsabilidad, de auxiliares para la ejecución del contrato.[28]

En cuanto al precio fijado para el contrato de servicios, el Artículo 1384 del Código Civil 2020, establece lo siguiente:

> El precio de los servicios se determina por el convenio de las partes o, en su defecto, por la ley o los usos. Cuando no se haya convenido el precio ni exista ley ni usos aplicables, lo determina el tribunal.[29]

Nótese que el precio se determina por acuerdo entre las partes, y en su defecto, por la ley o los usos. Ahora, de no haberse convenido el precio ni exista ley ni usos aplicables, entonces, lo determinará el tribunal.

No podemos pasar por alto que el contrato de servicios le impone obligaciones, tanto al comitente (persona que recibe los

---

[27] 31 LPRA sec. 10291.
[28] 31 LPRA sec. 10292.
[29] 31 LPRA sec. 10301.

servicios) como al prestador de servicios (persona que provee los servicios).

En cuanto al comitente, el Artículo 1385 del Código Civil 2020, establece las siguientes obligaciones:

> El comitente está obligado a:
> **(a)** pagar el precio de los servicios; y
> **(b)** proporcionar la colaboración necesaria para que los servicios puedan prestarse.[30]

En lo que respecta al prestador de servicios, el Artículo 1386 del Código Civil 2020, dispone las siguientes obligaciones:

> El prestador de servicios está obligado a:
> **(a)** prestar los servicios según lo convenido y los conocimientos que exige el arte, la ciencia o la técnica correspondiente a la actividad constitutiva de los servicios;
> **(b)** proveer al comitente la información esencial sobre la ejecución;
> **(c)** aportar los materiales utilizados corrientemente en la prestación de los servicios convenidos; y
> **(d)** prestar los servicios dentro del tiempo convenido o en el que razonablemente corresponda.[31]

El Artículo 1387 del Código Civil 2020, establece dos (2) causas por las cuales un contrato de servicios podría tornarse ineficaz:

> El contrato de servicios adviene ineficaz cuando:
> **(a)** la muerte del comitente hace imposible o inútil la prestación de los servicios; y
> **(b)** el comitente no ha convenido la continuación del contrato con los herederos del prestador de servicios.[32]

Por lo cual, si el contrato de servicios se torna ineficaz bajo las causas antes citadas, el Artículo 1388 del Código Civil 2020, establece las consecuencias de la extinción:

> En los casos de ineficacia el comitente **debe** pagar, en proporción al precio, los servicios ya prestados.[33]

No obstante, el Artículo 1389 del Código Civil 2020, permite al comitente resolver unilateralmente el contrato de servicios:

> El comitente puede resolver unilateralmente el contrato de servicios, aunque la ejecución haya comenzado. Sin embargo, **debe** pagar al prestador los gastos en los que ha incurrido, el trabajo realizado y la utilidad que pudo obtener.[34]

---

[30] 31 LPRA sec. 10311.
[31] 31 LPRA sec. 10312.
[32] 31 LPRA sec. 10321.
[33] 31 LPRA sec. 10322. Énfasis nuestro.
[34] 31 LPRA sec. 1023. Énfasis nuestro.

Cabe destacar que, de los Artículos 1388 y 1389 antes citados, se desprende el **deber** del comitente de pagar por los servicios prestados.

**-C-**

La industria de seguros en nuestro ordenamiento jurídico está revestida de un gran interés público debido a su complejidad, efecto e importancia sobre amplios sectores de la economía y la sociedad.[35] Este alto interés en gran medida se debe "al papel que juega en la protección de los riesgos" que amenazan la vida o el patrimonio de los ciudadanos" y a la "la extraordinaria importancia que juegan los seguros en la estabilidad de nuestra sociedad".[36] En armonía con el interés público que representa, la industria de seguros vino a ser regulada con la promulgación de la Ley Núm. 77 de 19 de junio de 1957, según enmendada, mejor conocida como el Código de Seguros de Puerto Rico (en adelante, Código de Seguros). Aunque el Código de Seguros ha sido objeto de múltiples enmiendas y determinaciones judiciales, ha permanecido como el cuerpo legal que en primera instancia rige la tan importante práctica del negocio de los seguros en Puerto Rico.

El Artículo 1.020 del Código de Seguros define el contrato de seguro como "*el contrato mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo*".[37] La función primordial del contrato de seguro está en la obligación de indemnizar y proteger al asegurado mediante el traslado del riesgo económico a la aseguradora de ocurrir el evento incierto específicamente pactado en el contrato.[38] A cambio del pago de una

---

[35] *Jiménez López et al. v. Simed*, 180 DPR 1, 8 (2010).

[36] *Rivera Matos, et al. v. Tripe-S Propiedad, Inc. y ACE Insurance Company*, 204 DPR 1010, 1019 (2020); *R.J. Reynolds v. Vega Otero*, 197 DPR 699, 706 (2017).

[37] 26 LPRA sec. 102.

[38] *Rivera Matos, et al. v. ELA, supra,* a la pág. 1032; *Comisionado de Seguros v. Corp. para la Defensa de Licencias de Armas*, 202 DPR 842, 856 (2019).

prima, es transferido a la aseguradora el riesgo de un evento específico pactado de antemano en el contrato de seguro.[39]

Sobre dicho contrato, nuestro Tribunal Supremo ha expresado:

> [e]s un mecanismo para enfrentar la carga financiera que podría causar la ocurrencia de un evento específico. Los aseguradores, mediante este contrato, asumen la carga económica de los riesgos transferidos a cambio de una prima mediante el cual, a cambio de una prima, el asegurador asume unos riesgos. La asunción de riesgos es, por lo tanto, uno de los elementos principales de este contrato. En resumen, en el contrato de seguros se transfiere el riesgo a la aseguradora a cambio de una prima y surge una obligación por parte de esta de responder por los daños económicos que sufra el Asegurado en caso de ocurrir el evento específico.[40]

Es norma reiterada que la relación **entre aseguradora y asegurado** es de naturaleza contractual, la cual se rige por lo pactado en el contrato de seguros y "constituye la ley entre las partes".[41] El Código de Seguros, *supra,* establece que "todo contrato de seguro debe interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido o modificado por aditamento, endoso o solicitud que sean añadidos a la póliza para formar parte de ésta".[42] Es decir que, al interpretarse la póliza, ésta debe hacerse conforme al propósito de la misma, o sea, el ofrecer protección al asegurado.[43]

**-III-**

Planell acude a este foro intermedio y solicita que revoquemos la *Sentencia* emitida y notificada el 27 de marzo de 2025, en la que desestimó su causa de acción en cobro de dinero por entender que no realizó las gestiones de cobro suficientes con el plan médico del

---

[39] *Viruet et al. v. SLG Casiano-Reyes*, 194 DPR 271, 278 (2015).
[40] *Coop. Ahorro y Crédito Oriental v. SLG*, 158 DPR 714, 721 (2003).
[41] Art. 1230 del Código Civil de Puerto Rico; *TOLIC v. Febles Gordián*, 170 DPR 804, 812 (2007). (Énfasis suplido).
[42] Art. 11.250 del Código de Seguros, 26 LPRA sec. 1125; *Maderas Tratadas v. Sun Alliance et al.,* 185 DPR 880 (2012); *Echandi Otero v. Stewart Title, supra*; *Monteagudo Pérez v. ELA,* 172 DPR 12 (2007).
[43] *Coop. Ahorro y Créd. Oriental v. SLG, supra*, pág. 723.

señor Cruz Serrano para recobrar por los servicios de transportación prestados. De igual forma, entendió que Planell falló al no informarle a la señora Cruz Ramírez que el plan médico de su padre no cubría los gastos de los servicios de transportación en ambulancia. Además, encontró que el contrato habido entre Planell y la apelada no era claro en cuanto al costo de los servicios, y por ende, la deuda no era líquida ni exigible.

Luego de examinar el expediente ante nuestra consideración, diferimos de lo anterior.

**En primer orden**, el TPI correctamente determinó que existía un contrato de servicios entre Planell y la señora Cruz Ramírez, en el cual se brindaron **todos** los servicios de transportación requeridos.[44] Consistente en que el apelante le brindaría el servicio de transportación en ambulancia al señor Cruz Serrano desde su hogar en el Barrio Castañer en Lares hasta el Centro Renal de Lares y viceversa. Por lo que a tono con el inciso (a) del citado Artículo 1385 del Código Civil 2020, el comitente está obligado a pagar el precio de los servicios recibidos.[45]

**En segundo orden**, en el Anexo #3 al anverso de la *Hoja de Incidente*, la señora Cruz Ramírez —en representación del paciente, señor Cruz Serrano— se comprometió con su firma a lo siguiente:

> **"Yo (o mi encargado en el momento) firmante en el Anexo #3 área frontal de este documento legal, acepto el cuidado pre-hospitalario y transportación en ambulancia. Y me comprometo a pagar a PLANELL AMBULANCE SERVICES, INC. por los servicios rendido (sic) de acuerdo a las tarifas prevalecientes y autorizo a que me facture a mi plan médico que poseo por los servicios rendidos de acuerdo a las tarifas vigentes"**.[46]

Nótese que esta cláusula tiene dos obligaciones para la apelada. En la primera, se obliga a pagar por los servicios prestados por Panell, de acuerdo a las tarifas prevalecientes. En la segunda, le

---

[44] Véase la determinación de hechos núm. 5 de la Sentencia apelada.

[45] 31 LPRA sec. 10311.

[46] Véase la determinación de hechos núm. 6 de la Sentencia apelada. Énfasis nuestro.

autoriza al apelante a facturar al plan médico del señor Cruz Serrano por los servicios recibidos. Es decir, la señora Cruz Ramírez se obligó a pagar por los servicios prestados —y como fuente primaria de pago— autorizó a que se utilizara el seguro médico que en ese momento poseía el señor Cruz Serrano.

Conforme a la cláusula del Anexo #3 antes citada, Planell intentó facturar al plan médico por los servicios de transportación provistos. Sin embargo, el 30 de marzo de 2021 el señor Cruz Serrano cambió su seguro médico de MCS a CIGNA, sin notificarlo a Planell.[47] Por lo que al hacer la gestión de facturación con MCS por el servicio de transporte del 3 de abril de 2021, no reflejaba seguro médico alguno ni elegibilidad del paciente.[48] Por esa razón, Panell se comunica con la señora Cruz Ramírez y, el 13 de abril de 2021 la apelada le provee, a través de *WhatsApp*, una foto del **nuevo** plan médico CIGNA.[49]

Mientras hacía la gestión de cobro con el nuevo plan,[50] Planell continuó prestando los servicios y la señora Cruz Ramírez siguió accediendo a estos; a tal grado, que brindó **todos** los servicios de transportes requeridos por el paciente. No obstante, en dicha gestión de cobro con CIGMA, el apelante recibe una información de parte de su agente de cobro, señora Kiara Vega Gonzalez, que tuvo como resultado que no se pudiera cobrar de —esa primera fuente de pago— los servicios provistos al paciente.[51]

---

[47] Véase la determinación de hechos núm. 11 de la Sentencia apelada. Cabe indicar que el transporte del 30 de marzo de 2021 no fue pagado debido a que la apelada no proveyó una certificación médica expedida por el médico primario que era necesaria para procesar el pago. En específico, véase la determinación de hechos núm. 13 de la Sentencia apelada.

[48] Véanse las determinaciones de hechos núm. 14 y 16 de la Sentencia apelada.

[49] Véase la determinación de hechos núm. 15 de la Sentencia apelada.

[50] Véase la última oración de la determinación de hechos núm. 14 de la Sentencia apelada, en la que la señora Kiara Vega González se comunica con los funcionarios del plan médico CIGNA, en su gestión de cobro.

Resulta importante que en la nota al calce de la determinación de hechos núm. 14, no se admite el contenido de la comunicación entre Kiara Vega González y el funcionario de CIGMA, que llevó a que no se pudiera cobrar los servicios de transportes. No obstante, como prueba ofrecida y no admitida, Kiara Vega González declaró que el funcionario de CIGNA le indicó que no ofrecían cubierta por servicios de transportación en Puerto Rico.

[51] *Íd.*

Entonces, no resulta correcto concluir que Panell no hizo gestión alguna de cobro con el nuevo plan médico CIGNA.[52] Todavía más, el TPI se equivoca cuando indica que no procedía la demanda de cobro contra la señora Cruz Ramírez, ya que le correspondía a Planell informar a la apelada sobre la falta de cubierta para los servicios de transportación en ambulancia, antes de culminar los mismos. Es decir, erradamente resuelve que la parte apelante tenía la responsabilidad de informarle a la señora Cruz Ramírez que CIGNA —el nuevo plan médico de su padre y fuente primaria de pago— no cubría los servicios de transportación en ambulancia, y no esperar, a que dichos servicios se brindaran en su totalidad.

Según discutiéramos anteriormente, la relación contractual de servicios entre Planell y la señora Cruz Ramírez se limitaba al transporte en ambulancia de señor Cruz Serrano. El contrato de seguro médico entre el paciente y CIGNA, nada tiene que ver con el contrato de servicios entre Planell y la apelada. No olvidemos que la función primordial del contrato de seguro está en la obligación de indemnizar y proteger al asegurado mediante el traslado del riesgo económico a la aseguradora de ocurrir el evento incierto específicamente pactado en el contrato.[53] Además, el inciso (b) del referido Artículo 1385 del Código Civil 2020, obliga al comitente a proporcionar la colaboración necesaria para que los servicios puedan prestarse.[54]

Por lo tanto, era responsabilidad de la señora Cruz Ramírez conocer la cubierta que ofrecía el nuevo plan médico de su padre, pues conforme al mencionado Anexo #3 de la cláusula del contrato de servicios, la apelada se obligó con su firma a pagar por los servicios de transporte de ambulancia brindados por Panell.

---

[52] Véase la determinación de hechos núm. 22 de la Sentencia apelada que resulta contradictoria con las determinaciones de hechos núm. 14 y 16.

[53] *Rivera Matos, et al. v. ELA, supra,* a la pág. 1032; C*omisionado de Seguros v. Corp. para la Defesa de Licencias de Armas*, 202 DPR 842, 856 (2019).

[54] 31 LPRA sec. 10311.

**En tercer orden**, el contrato de servicios no cuenta con una tarifa fija para los servicios de transportación. No obstante, reza en dicho contrato que las tarifas serían las prevalecientes o vigentes al momento del convenio.[55] De conformidad con la determinación de hechos núm. 5 de la Sentencia apelada, Panell brindó un total de dieciocho (18) transportes. En virtud del Artículo 1384 del Código Civil 2020, *supra*, el precio de los servicios se determina por el convenio de las partes o, en su defecto, por la ley o los usos. Asimismo, cuando no se haya convenido el precio ni exista ley ni usos aplicables, lo determina el tribunal.[56]

Ahora, surge del expediente la declaración jurada del señor Gustavo Panell Pabón en la que indica que las tarifas prevalecientes eran de $338.36.[57] Sin embargo, en la determinación de hechos núm. 7 de la Sentencia apelada, se indica una tarifa de $338.00, sin incluir los .36 centavos, a pesar de que en la presente demanda[58] y en la Sentencia apelada se reclama la cantidad de $6,090.48, que es compatible con la tarifa de $338.36.[59]

En este caso determinamos que el precio de la tarifa es de $338.36, lo que multiplicado por dieciocho (18) transportes equivalen a la cantidad total de $6,090.48. Sin embargo, en la determinación de hechos núm. 17 de la Sentencia apelada, se hace constar que:

> *Las hojas de incidente correspondientes los servicios de transportación brindados el 1 y 6 de abril de 2021 no fueron firmados por la Parte Demandada.[60] [...].*

---

[55] Véase la determinación de hechos núm. 6 de la Sentencia apelada.

[56] 31 LPRA sec. 10301.

[57] Véase la declaración jurada del señor Gustavo Panell Pabón que obra en el apéndice del recurso a las págs. 14-15.

[58] Véase la *Demanda* que obra en el apéndice del recurso a la pág. 1.

[59] Véase la Sentencia apelada que obra en el apéndice del recurso a la pág. 33.

[60] Sobre estas hojas de incidentes el testimonio de Gustavo Planell Pabón fue contradictorio. Preguntado sobre ello por la representación legal de la Parte Demandante, afirmó que la hoja del 1 de abril de 2021 fue firmada por la Parte Demandada. **Sin embargo, en el contrainterrogatorio, afirmó que las hojas de incidente correspondientes al 1 y 6 de abril de 2021 habían sido firmadas por el hermano de la Parte Demandada. Dicha contradicción, sumado al hecho de que Gustavo Planell Pabón no estuvo presente al momento de la firma de las hojas de incidente, le resta credibilidad a su versión de quién imprimió su firma en dichos documentos**. Énfasis nuestro.

Recordemos que en el Anexo #3 al anverso de la *Hoja de Incidente,* la señora Cruz Ramírez —en representación del paciente, señor Cruz Serrano— se comprometió con su firma a pagar por los servicios de transporte brindados. Ante la ausencia de la firma de la apelada en las hojas de incidente de los servicios de transportación recibidos el 1 y 6 de abril de 2021, no deben ser pagados por esta, ya que la firma que aparece es la de su hermano, quien no es parte en este pleito. Por lo tanto, procede contabilizar catorce (14) transportes (ida y vuelta) para una cantidad total de $4,737.04.[61]

A tono con lo antes expuesto, se revoca la Sentencia apelada y se ordena a la señora Cruz Ramírez a pagar la cantidad de $4,737.04 por servicios de transporte brindados por Planell. Visto el tracto procesal y lo aquí resuelto, no se le imponen honorarios de abogados a la parte apelada. Sin embargo, se le imponen gastos y costas.

**-IV-**

Por los fundamentos antes expresados, **revocamos** la *Sentencia* apelada y en consecuencia, declaramos Ha Lugar la demanda en cobro de dinero por la cantidad de $4,737.04, más gastos y costas; incluyendo, el interés legal de 8.50% sobre las partidas antes mencionadas.[62]

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[61] Para conocer las fechas de los catorce (14) transportes servidos, véase la determinación de hechos núm. 10 de la Sentencia apelada. Es decir, $338.36 x 14 = $4,737.04.

[62] Véase, los intereses aplicables a las sentencias judiciales de la Oficina del Comisionado de Instituciones Financieras de Puerto Rico. https://www.ocif.pr.gov/intereses-aplicables